UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                  )
DAVID BERGERON ET AL.,         )
      Plaintiffs                    )
                                  )
       v.                         )
                                  )      C. A. No. 05-11661-RGS
ANDREA CABRAL, INDIVIDUALLY   )
And SHERIFF OF SUFFOLK COUNTY, )
      Defendant                   )
_____)

## DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Defendant Andrea Cabral, Individually and as Sheriff of Suffolk County, hereby moves pursuant to Fed.R. Civ. P. 37 (a) (3) & (4) to compel the Plaintiffs to produce all relevant documents responsive to the Defendant's First Request for Production of Documents.  This is an action brought pursuant to 42 U.S.C. § 1983 alleging retaliation based upon political affiliation and union activity.  The Plaintiffs are all officers at the Nashua Street Jail who allege that Sheriff Cabral decommissioned them as Deputy Sheriffs and took other adverse employment action against them in retaliation for their union activity and support for her political opponent.  In their Complaint, Plaintiffs contend that they have suffered economic damages and physical and emotional pain and suffering.  Defendant Cabral maintains that the decommissioning and other employment action taken was a lawful exercise of her authority pursuant to M.G.L. c. 37, § 3 as Sheriff and consistent with Department policy, and was not retaliatory.

The Plaintiffs' complaint was filed on August 11, 2005.  After a scheduling conference the Court issued a Scheduling Order on December 1, 2005, which called for

the completion of discovery by August 31, 2006. Given the complex issues and number of plaintiffs[1] involved in the litigation, the parties sought and were granted a 120-day extension to complete discovery. Accordingly, the discovery deadline was extended to January 31, 2007. The Plaintiffs' dilatory response to discovery necessitated the filing of the Defendant's first Motion to Compel (Document No. 9) on January 12, 2007. On January 25, 2007 the Court found the Defendant's Motion to Compel moot when the parties jointly requested an additional extension of the discovery period to March 31, 2007 and the filing of summary judgment to May 31, 2007. (Docket No. 10).

Since that time Plaintiffs have failed to produce the discovery requested in the previous motion as well as other responsive and relevant documents that have been identified through deposition. At least five depositions have been suspended because the Plaintiffs have failed to produce discovery that was sought over eight months ago. Answers to Interrogatories served on several of the plaintiffs on February 1, 2007 were due on March 5, 2007 but have yet to be provided. Additionally, the plaintiffs have failed to respond to the subpoena duces tecum served on the Jail Officers and Employees Association of Suffolk County (JOEASC), the union for some of the plaintiffs, even though the production date was extended at the Plaintiffs' request to March 12, 2007. Counsel for the Defendant has attempted to handle this impasse informally, through written and verbal communication with Plaintiffs' counsel, to no avail.

More than eight months ago, Defendant Cabral served a Request for Production of Documents on the Plaintiffs, seeking documents regarding the allegations in the complaint and the Plaintiffs' claims for economic, emotional and physical damages. (Exhibit 1 contains Defendant's First Request for Production of Documents and

---

[1] There are ten plaintiffs.

Plaintiffs' Response). Through the deposition process the Defendant has discovered that the Plaintiffs' response to the request for production of documents was incomplete and wholly inadequate. Although Plaintiffs' counsel has been repeatedly put on notice that their initial response was deficient and that there exist specific responsive documents in the Plaintiffs' care, custody and control, they have failed to produce said documents or supplement their initial response.[2] Plaintiffs' failure to comply with their discovery obligations has necessitated the expenditure of considerable time and effort to obtain documents that are unquestionably discoverable. Furthermore, it has adversely affected the Defendant's ability to prepare its summary judgment filings in anticipation of the May 31, 2007 deadline, and additional time may be needed. Accordingly, Defendant Cabral requests that this Court issue an order compelling Plaintiffs to produce all outstanding discovery by May 8, 2007 and to pay costs. Defendant further requests that should Plaintiffs fail to do so, that the Court dismiss their complaint with prejudice.

Document Request No. 9 requested copies of plaintiffs' federal and state tax returns for the last five years. Plaintiffs promised to supplement this response by producing the records. Despite repeated written and verbal requests, to date tax returns for only six of the ten plaintiffs have been produced[3]. (see Affidavit of Ellen M. Caulo attached as Exhibit 2; correspondence dated: October 5, 2006; December 5, 8 & 14,

---

[2] On January 8, 2007 Plaintiffs' counsel did produce mental health treatment records for Plaintiff David Bergeron. These records are clearly responsive to Request Nos. 10 & 11 of Defendant's First Request for the Production of Documents, which were served on May 18, 2006. In their response, Plaintiffs' counsel stated that Plaintiffs had no such documents in their care, custody or control. Defendant first became aware of the existence of these records during Plaintiff Bergeron 's deposition on October 9, 2006. A verbal request was made for the records during the deposition, which was followed by a written request on October 14, 2006. Although the records appear to have been printed on October 31, 2006, they were not produced until January 8, 2007, within three weeks of the discovery deadline and almost eight months after requested.
[3] Some of the records that have been produced are also not complete, in that forms and attachments have not been provided.

2006; and January 8, 2007 attached as Exhibit 3).   Depositions of at least five plaintiffs

have had to be suspended due to this dilatory response.  Indeed, Plaintiff Timothy Turley[4]

testified in his deposition that he had not even been asked to produce his tax returns,

> Q:    Did you produce your tax records, Corporal?
>
> A:    No.
>
> Q:    …Has anybody ever asked you for your tax records,
>        Corporal?
>
> A:    **No.**  Barnes and Grennon mentioned they had to produce
>        theirs, **but nobody specifically asked me for mine**.[5]

(Deposition of Plaintiff Timothy Turley, pg. 167, lines 8-20 attached as Exhibit 4),

and Plaintiff Erik Dilibero admitted that he had not turned his tax returns over to his

counsel.  (Deposition of Erik Dilibero pg. 67, lines 18-24; pg. 68, lines 1-5, attached as

Exhibit 5).

Document Request No. 10 requested documents, records, or reports supporting

Plaintiffs' claims for emotional distress.  Similarly, Document Request No. 11 requested

"any and all records of any medical treatment, counseling or psychological treatment

undertaken by the plaintiffs as a result of the allegations contained in the plaintiffs'

complaint".  The Plaintiffs' response to both of these requests was identical: "the

plaintiffs have no such documents in their care, custody or control."  (Exhibit 1)  Plaintiff

Bergeron was deposed on October 4, 2006.  During his deposition, Bergeron testified that

the revocation of his Deputy Sheriff status had impacted the issues for which he was

already seeking mental health treatment and that he discussed this litigation during the

---

[4] Plaintiff Turley was deposed on January 9, 2007.  His deposition was originally noticed for November 17, 2006 but was rescheduled twice at the request of Plaintiffs' counsel.  (Exhibit 2, Affidavit of Ellen M. Caulo).

[5] Subsequent to his deposition, Plaintiff Turley's tax returns were produced.

course of that mental health treatment.  (Deposition of David Bergeron, pg. 145, lines 11-24, pg. 146, lines 5-14, attached as Exhibit 6).  Defendant made a formal request for those records by letter dated October 5, 2006. (correspondence dated October 5, 2006, Exhibit 3).  The records were not produced until Monday January 8, 2007, although there is a notation on the records indicating that they were printed on October 31, 2006.  (See Affidavit of Ellen M. Caulo, Ex. 2).  Although Mr. Bergeron testified that he regularly received such treatment, the initial production of records from October 2006 has not been supplemented.

Similarly, Plaintiff Paul Giglio was deposed on December 13, 2006.  During his deposition, Giglio testified to physical symptoms of stress that he alleged were related to his decommissioning and that he was being treated for those symptoms by a medical doctor.  (Deposition of Paul Giglio, pg. 113, lines 6-20, attached as Exhibit 7). A formal request was made for these records by letter dated December 14, 2006. (correspondence dated December 14, 2006, Exhibit 3). To date no records have been produced.  (Exhibit 2, Affidavit of Ellen M. Caulo).

Plaintiff Dilibero was also deposed on December 13, 2006.  During his deposition, Dilibero testified to the stress that the decommissioning has placed on his marriage and that he and his wife were involved in marriage counseling.  (Dilibero Deposition, pg. 125, lines 7-20, attached as Exhibit 5).  By letter dated December 14, 2006 Defendant made a formal request for Dilibero's marriage counseling records. (correspondence dated December 14, 2006, Exhibit 3).  To date the records have not been produced.  (Exhibit 2, Affidavit of Ellen M. Caulo).

Plaintiff Grennon was deposed over two days: January 19 and February 26, 2007. During his deposition, Grennon testified that he received counseling for stress he contends was related to the decommissioning.  By letter dated March 1, 2007 Defendant made a formal request for Grennon's counseling records.  (correspondence dated March 1, 2007, Exhibit 3).  Despite one additional written request for those records, to date they have not been produced. The only document that has been produced relative to Mr. Grennon's counseling records is a copy of a release authorizing an unidentified provider to furnish medical/psychiatric records to Plaintiffs' counsel.  (Exhibit 2, Affidavit of Ellen M. Caulo).

Document Request No. 3 requested "any and all documents, records, reports, memoranda, correspondence or email concerning the allegations in the complaint."  In response, Plaintiffs provided a few documents, most of which were already in the possession of the Defendant.  During the depositions of Plaintiffs Timothy Turley, John Ellis, John Grennon, and John Barnes however, it became evident that there were numerous other responsive documents in the care, custody and control of the plaintiffs that had not been produced.  Specifically, Plaintiff Turley testified that he had notes and an e-mail file regarding the incidents that form the basis for the instant lawsuit.  He further testified that he had not been asked to produce any responsive documents.

Q;      …What notes do you have pertaining to the incidents
        that form the basis for this lawsuit that involved you?

A:      Physical notes would be contained, written notes would
        be in the George McCallum file and another file that
        resulted in my discipline.  I have those at home.  I
        have an e-mail file that has several communications
        with counsel and some other union officials titled
        'Lawsuit.'  There is numerous electronic files in there.
        Not all of them pertain.

6

Q:    That is something that you and your counsel can review. There is an outstanding discovery request that was filed in May, and I don't have that in front of me, but my sense is that some of the documents that you are talking about now are responsive to that.  Has a request been made directly to you too turn over any documents?

A:    Not directly.

Q:    Indirectly?

A:    Some of the other people, parties to this suit told me that some documents wire requested, but **nothing specifically of me has been requested other than my appearance, of course, today.**

(Turley Deposition, pg. 11, lines 2-24; pg. 12, lines 1-12, Exhibit 4).  A request was made on the record to produce responsive documents. (Turley Deposition, pg. 12, lines 13-23, Exhibit 4).  To date no documents have been produced. (Exhibit 2, Affidavit of Ellen M. Caulo).

Plaintiff John Ellis was the recording secretary for JOEASC from approximately April 2003 to October 2004.  In his deposition testimony on January 18, 2007 he testified that a box of JOEASC documents, including drafts of the mailings and minutes of meetings, were provided to counsel for the Plaintiffs sometime in the fall of 2004 after new union leadership was elected.  (Deposition of John Ellis, pg. 78, lines 22-24; pg. 79, lines 1-10; pg. 82, lines 20-21; pg. 83, lines 11-15; pg. 174, lines 1-6, attached as Exhibit 8).  During a telephone call with Attorney Pfaff after the deposition was concluded, counsel for the Defendant requested that a search be undertaken for those documents.  To date no documents have been produced nor has counsel for the Plaintiffs provided any explanation for Mr. Ellis's testimony.  Additionally, a subpoena duces tecum was served on JOEASC with the return date extended to March 12, 2007, to accommodate Plaintiffs'

7

counsel. To date no documents have been produced, nor has there been a response to the subpoena. (Exhibit 2, Affidavit of Ellen M. Caulo).

In his deposition testimony on February 26, 2007, Plaintiff Grennon stated that he had prepared handwritten notes of a meeting that he and Plaintiff John Barnes had with Defendant Sheriff Cabral in April 2004 concerning mailings and a press release disseminated by Plaintiffs Grennon, Barnes and Ellis. Mr. Grennon testified that he gave the notes to Attorney David Condon of Merrick, Louison & Costello, LLP[6]. (Deposition of John Grennon, p. 202, lines 8-15; p. 203, lines 1-11, attached as Exhibit 9). These three plaintiffs (Grennon, Barnes and Ellis) contend that Defendant Sheriff Cabral decommissioned them in part, because of their involvement in preparing and issuing these mailings. They also allege that they were threatened during this meeting. Clearly, notes prepared by Plaintiff Grennon concerning a meeting he had with the Defendant regarding allegations in the instant complaint are discoverable. A request for the notes was made during the deposition and later in correspondence dated March 1 and March 15, 2007. To date the notes have not been produced.

Plaintiff John Barnes was deposed over two days: October 31, 2006 and December 7, 2006. Barnes testified that he regularly used his own personal computer to conduct union business and may have copies of emails, documents, and correspondence relevant to the issues in the instant litigation. Despite a request made on the record at the

---

[6] Significantly, in correspondence dated January 8, 2007, plaintiffs' counsel stated, "I have reviewed your initial request for production, plaintiff's automatic discovery disclosure as well as your follow up letters thereto, and I breakdown each plaintiff in that regard…There are no requests for documents regarding John Grennon (which may change after his deposition)." The counseling records and handwritten notes of the meeting with Sheriff Cabral are clearly responsive to the Defendant's request for production and directly relevant to claims in the Plaintiffs' complaint. They should have been included with the Plaintiffs' response to the request for production. It is incumbent upon the Plaintiffs to exercise due diligence and produce all responsive documents and not wait for the Defendant to identify their existence eight months later during a deposition.

deposition, and memorialized in subsequent correspondence, for production of said documents, none have been produced.  Nor has counsel provided any explanation for his failure to produce the documents referenced by Plaintiff Barnes.  Mr. Barnes also testified that during his tenure as President of JOEASC, union documents, records, and minutes of meetings were stored in a locker in the employee locker room at the NSJ. Barnes testified that the locker was no longer utilized and everything that was contained in it "may have been turned over to, I am only speculating, may have been turned over to Attorney Condon and Attorney Pfaff's office." (Deposition of John Barnes, December 7, 2006, p. 70, lines 15-17, attached as Exhibit 10).  This is consistent with the testimony of Plaintiff John Ellis who testified that in the fall of 2004 during a leadership change in JOEASC, a box of union documents was turned over to the law firm of Merrick, Louison and Costello, LLP.

Thereafter, Defendant took the deposition of Plaintiff John Barnes as the duly authorized 30(b)(6) representative of JOEASC, on March 28, 2007.  Although Mr. Barnes was designated by JOEASC as the best person to testify as to the topics set forth in schedule A, attached to the deposition notice (attached hereto as Exhibit 11), he did not speak with anyone or review any documents in preparation for his testimony.  Indeed, Mr. Barnes acknowledged that the only thing he did to prepare for his deposition was to review the list of topics the night before. (Deposition of JOEASC 30(b)(6) (John Barnes) p. 6, lines 9-24; p. 7, lines 3-14, attached as Exhibit 12).   During his deposition as the 30(b)(6) representative of JOEASC, Mr. Barnes testified that locker #220 in the employee locker room at the NSJ was utilized by the JOEASC Executive Board to store and maintain union documents, including official minutes of union meetings (general

membership, Executive Board, Board of Directors), correspondence sent and received, records concerning contract negotiations, financial records, information requests, and records concerning the terms and conditions of employment.  In contrast to his testimony as an individual plaintiff, Mr. Barnes testified definitively as the 30(b)(6) JOEASC representative that, at some point during a change in the leadership of JOEASC, perhaps in 2006, union documents stored in locker #220 were turned over to the law firm of Merrick, Louison and Costello, LLP. (Deposition of JOEASC 30(b)(6) (John Barnes) p.14-16, 19, lines 13-24; p. 20, lines 1-24, attached as Exhibit 12).  Mr. Barnes did not inquire as to what specific documents were turned over, whether they are still located at Merrick, Louison & Costello, nor did he undertake a search for the documents.  Despite the fact that two plaintiffs and former union officials have testified that their attorneys stored union documents on their behalf, none of the requested documents have been turned over nor has any explanation been provided as to their whereabouts.

WHEREFORE, Defendant requests that this Court order Plaintiffs' counsel to inquire of each Plaintiff whether they have documents responsive to Defendant's request for production of documents.  Plaintiffs should thereafter be ordered to conduct a search for all responsive documents and produce all responsive documents by May 8, 2007. Additionally, Plaintiffs should be ordered to provide answers to Interrogatories previously served.  Further the Court should order that Plaintiffs pay costs incurred by Defendant in pursuing the discovery and filing the instant Motion.  Finally, should the Plaintiffs fail to produce all relevant discovery, Defendant Cabral respectfully requests that the Court dismiss the instant complaint with prejudice.

10

Respectfully submitted,
For the Defendant,
By her Attorney

/s/ Ellen M. Caulo
Ellen M. Caulo, B.B.O. #545250
Deputy General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA  02114
(617) 961-6681

Date: April 25, 2007

Local Rule 7.1 Certification

I certify that I have consulted with counsel for the Plaintiffs in an effort to
Resolve the issues contained within this motion.

/s/ Ellen M. Caulo
Ellen M. Caulo

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electric Filing
(NEF).

/s/ Ellen M. Caulo
Ellen M. Caulo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11661-RGS

DAVID BERGERON, JOHN GRENNON,
LORNE LYNCH, JOHN BARNES,
JOHN ELLIS, TIMOTHY TURLEY,
AL MOSCONE, WILLIAM PENEAU,
ERIC DILIBERO and PAUL GIGLIO,
      Plaintiffs,

V.

ANDREA CABRAL, INDIVIDUALLY and
as SHERIFF OF SUFFOLK COUNTY,
      Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT ANDREA CABRAL'S REQUEST FOR PRODUCTION OF DOCUMENTS

The plaintiffs recognize their duty to continue a do an diligent examination of their records in order to respond to defendant's discoverable requests.

Request No. 1

Any and all documents, reports, records, memoranda, email or correspondence containing statements made by the plaintiff's regarding the allegations made in the complaint.

Response No. 1

Please see attached documents marked as Exhibit A.

Request No. 2

Any and all documents, records, reports, memoranda, email or correspondence containing statements made by any witness or person who may have knowledge of the allegations in the complaint.

Response No. 2

Please see attached documents marked as Exhibit B.

Request No. 3

Any and all documents, records, reports, memoranda, correspondence or email concerning the allegations in the complaint.

Response No. 3

Objection. Without waiving said objection, please see attached documents marked as Exhibits A and B.

Request No. 4

Any and all documents, records, or reports relating to, commenting on or concerning any damages and expenses sustained or incurred by the plaintiffs as a result of the events or occurrences alleged in the plaintiff's complaint.

Response No. 4

Please refer to plaintiff's response to Request No. 9.

Request No. 5

Any and all documents of any kind that the plaintiffs intend to offer as evidence at trial.

Response No. 5

Objection. The plaintiffs have not yet made a determination as to the documents they expect to use at trial.

Request No. 6

Any and all documents, reports, records, email, memoranda, notices, or other correspondence concerning any of the allegations in the plaintiffs' complaint between any of the plaintiffs, their

agents, servants, employees, or other officer of the plaintiffs and defendant, her agents, or

employees.

**Response No. 6**

Please see attached documents marked as Exhibit A.

**Request No. 7**

Any and all documents, memoranda, records, emails, reports or other correspondence between

any of the plaintiffs and the defendant, Elizabeth Keeley, Michael Harris, Viktor Theiss, Eugene

Sumpter, Cliff Carney or Martin Michelman.

**Response No. 7**

Objection.  Plaintiffs object to this request as being overly broad and unduly burdensome and

not confined to a specific period of time.  Without waiving said objection, any such documents

would be in the possession of the defendant and/or her agents.

**Request No. 8**

Any and all financial records, reports, bills, invoices, receipts or other documents concerning

losses or expenses incurred by the plaintiffs as a result of the allegations in the complaint.

**Response No. 8**

Please refer to plaintiff's response to Request No. 9.

**Request No. 9**

True and complete copies of the plaintiffs' state and federal income tax records, including W-2

forms and any other forms, schedules or attachments filed with Internal Revenue Service and

the Massachusetts Department of Revenue for the last five years up to an including the present

date.

Response No. 9

The plaintiffs will supplement this response.

Request No. 10

Any and all documents, records, or reports supporting the plaintiffs' claims for emotional

distress.

Response No. 10

The plaintiffs have no such documents in their care, custody or control.

Request No. 11

Any and all records of any medical treatment, counseling or psychological treatment undertaken

by the plaintiffs as a result of the allegations contained in the plaintiffs' complaint.

Response No. 11

The plaintiffs have no such documents in their care, custody or control.

Request No. 12

Any and all correspondence, memoranda, or emails between any of the plaintiffs and any employee

of the Suffolk County Sheriff's Department concerning the allegations contained in the plaintiffs'

complaint.

Response No. 12

Please see attached documents marked as Exhibits A and B.

Request No. 13

Any and all documents, records, reports, correspondence, memoranda or email between any of

the plaintiffs and the Training Staff of the Suffolk County Sheriffs' Department between

December 1, 2002 and April 21, 2005.

**Response No. 13**

Objection. The plaintiffs object to this request as being unduly broad and overly burdensome.
Without waving said objection, the plaintiffs respond that any such emails would be in the
possession of the defendant and/or her agents and employees.

**Request No. 14**

Any and all documents, records, reports, memoranda, email or correspondence concerning and/or
demonstrating the defendant's knowledge of the plaintiffs' political activities and/or support for and
contributions to the campaign of the defendant's political opponent(s) in the 2004 campaign for
Suffolk County Sheriff.

**Response No. 14**

The plaintiffs have no such documents in their care, custody or control.

**Request No. 15**

Any and all documents, records, reports, memoranda, email or correspondence concerning and/or
demonstrating any retaliatory adverse employment action taken by the defendant against any of the
plaintiffs.

**Response No. 15**

Please see attached documents marked as Exhibit B. In addition, any and all paperwork
concerning the transfer of the plaintiffs from their job position and/or shift position would be in the
possession of the defendant.

**Request No. 16**

Any and all documents, records, reports, correspondence, memoranda or emails concerning
plaintiff Grennon's removal as liaison for JOEASC for the Employee Assistance Program.

<u>Response No. 16</u>

The plaintiffs have no such documents in their care, custody or control. Any paperwork removing John Grennon from his position as liaison to the Employee Assistance Program would be in the possession of the defendant and/or her agents.

<u>Request No. 17</u>

Any and all documents, records, reports, correspondence, memoranda or emails concerning the interactions between plaintiff Bergeron and the defendant as set forth in ¶¶ 35-37 of the plaintiffs' complaint.

<u>Response No. 17</u>

The plaintiffs have no such documents in their care, custody or control.

<u>Request No. 18</u>

Any and all documents, records, reports, memoranda, email or correspondence concerning the transfer of plaintiff Moscone from Transportation.

<u>Response No. 18</u>

The plaintiffs have no such documents in their care, custody or control. Said documents would be in the possession of the defendant.

<u>Request No. 19</u>

Any and all documents, records, reports, memoranda, correspondence or email concerning the allegations contained in ¶ 59 of the complaint.

<u>Response No. 19</u>

The plaintiffs have no such documents in their care, custody or control.

**Request No. 20**

    Any and all documents, records, reports, memoranda, correspondence or email concerning the

allegations contained in ¶ 60 of the complaint.

**Response No. 20**

    The plaintiffs have no such documents in their care, custody or control.

> Plaintiffs, Bergeron, Grennon, Lynch, Barnes,
> Ellis, Turley and Moscone,
> By their attorney,
>
> *Stephen C. Pfaff (mcb)*
> Douglas I. Louison BBO# 545191
> Stephen C. Pfaff BBO# 553057
> Merrick, Lousion & Costello, LLP
> 67 Batterymarch Street
> Boston, MA 02110
> (617) 439-0305

<u>CERTIFICATE OF SERVICE</u>

    I, Stephen C. Pfaff, hereby certify that on the 31st day of May , 2006, I served the foregoing by causing a copy to be mailed, postage prepaid, directed to Ellen Caulo, Esquire Deputy General Counsel, Suffolk County Sheriff's Department, 200 Nashua Street, Boston, MA 02114

> *Stephen C. Pfaff (mcb)*
> Stephen C. Pfaff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                )
DAVID BERGERON ET AL.,                           )
        Plaintiffs                               )
                                                 )
        v.                                       )
                                                 )        C. A. No. 05-11661-RGS
ANDREA CABRAL, INDIVIDUALLY                      )
And SHERIFF OF SUFFOLK COUNTY,                   )
        Defendant                                )
_____)

## AFFIDAVIT OF ELLEN M. CAULO

I, Ellen M. Caulo, being duly sworn, do hereby depose and state:

1.      I am Deputy General Counsel for the Suffolk County Sheriff's Department.

2.      I am the attorney of record in the matter of Bergeron et al., v. Andrea Cabral, C.A.
        No. 05-11661-RGS currently pending in the Federal District Court.

3.      I am an attorney in good standing in the Commonwealth of Massachusetts and the
        District of Massachusetts.  I have been practicing law for over twenty years.

4.      On May 18, 2006 I served a Request for Production of Documents on counsel
        for the Plaintiffs, Stephen C. Pfaff, Esq.  The documents marked as Exhibit 1 are
        an accurate copy of the Defendant's Request for Production of Documents and the
        Plaintiffs' response.

5.      Although Plaintiffs' counsel represented that he would supplement his discovery
        response with the Plaintiffs' tax returns, to date the tax returns for only six
        Plaintiffs have been produced.

6.      During the process of deposing the individual Plaintiffs it became clear that there
        were other responsive documents in the care, custody or control of the Plaintiffs
        that had not been produced or even requested by Plaintiffs' counsel.

7.      With respect to counseling records of Plaintiff Grennon, the only document that
        has been produced is a copy of a release authorizing an unidentified provider to
        furnish medical/psychiatric records to Plaintiffs' counsel.

8.     With respect to Plaintiff Dilibero, treatment records pertaining to counseling have not been produced.

9.     With respect to Plaintiff Giglio, treatment records pertaining to physical symptoms of stress have not been produced.

10.    With respect to Plaintiff Bergeron, treatment records pertaining to mental health counseling have not been supplemented.

11.    A subpoena was served on JOEASC, seeking documents relevant to this litigation.  Although the return date was extended to March 12, 2007, no responsive documents have been produced.

12.    I have attempted to resolve this impasse informally by communicating with Plaintiffs' counsel through letters and phone calls in an effort to obtain the discovery.  The documents marked as Exhibit 3 are accurate copies of eleven letters sent to Attorney Pfaff (October 5 & 20; December 5, 8 & 14, 2006; January 8, 2007; March 1, 8 & 15, 2007; April 2 & 25, 2007)) seeking the production of outstanding discovery.

13.    In addition to the letters marked as Exhibit 3 I have also spoken directly with Attorney Pfaff on numerous occasions and left a number of messages in an effort to obtain the outstanding discovery.

14.    By conservative estimate I have spent twelve hours reviewing Plaintiffs' discovery responses and deposition transcripts, writing letters to and communicating with Attorney Pfaff, and preparing this Motion to Compel.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

/s/ Ellen M. Caulo
Ellen M. Caulo

Date: April 25, 2007



## Suffolk County Sheriff's Department



| Jail | House of Correction |
|---|---|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
SHERIFF

October 5, 2006

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:  Bergeron et al., v. Andrea Cabral, individually and as Sheriff of Suffolk County
     USDC Civil Action No. 05-11661-RGS

Dear Attorney Pfaff:

During his deposition yesterday, Mr. Bergeron testified that the revocation of his Deputy
Sheriff status has had some impact on the issues for which he was already seeking mental
health treatment and that he has discussed this litigation during the course of that mental
health treatment. These records are clearly responsive to Defendant's First Request for
Production of Documents and I ask that you produce them immediately. Further, based
upon my review of these records and any need for further questioning of Mr. Bergeron
concerning what is contained therein, I may seek to reopen his deposition. I trust that you
will have no objection to that request as the existence of these records should have been
disclosed and the records themselves produced prior to the deposition.

Similarly, during Mr. Moscone's deposition he testified that he might have calendars
documenting the details he has worked prior to his decommissioning in April 2005.
These documents are clearly responsive to the Defendant's First Request for Production
of Documents and I ask that you produce them immediately. Mr. Moscone's deposition
was suspended, not concluded, because his tax records were not produced in a timely
fashion. Should further inquiry be necessitated by my review of those records and any
calendars that are produced I will notify you.

Finally, I do not believe that any documents have been produced pursuant to the
subpoena served on JOEASC on April 13, 2006. Please produce any and all responsive
documents immediately.

Very truly yours,

Ellen M. Caulo

 

## Suffolk County Sheriff's Department

ANDREA J. CABRAL
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

**BY FAX & U.S. MAIL**

October 20, 2006

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    Bergeron et al., v. Andrea Cabral, individually, and as Sheriff of Suffolk County
       U.S.D.C. Civil Action No. 05-11661-RGS

Dear Attorney Pfaff:

During his deposition, Captain Moscone testified that he possesses a list of the
Department employees who attended the fundraiser he hosted for Stephen Murphy at the
Kailua Hawaiian in or about September 2004. (Moscone Deposition, pg. 106, lines 23-
24). The list is clearly responsive to the Defendant's First Request for Production of
Documents and I ask that you produce it immediately.

With respect to the remaining depositions, I have noticed John Barnes' deposition for
October 27, 2006 and the continuation of Lorne Lynch's deposition for November 2,
2006. The Lynch deposition will take place at the House of Correction. Sheriff Cabral
has prior commitments for the dates you indicated that you were available (November 14,
16 & 17). Therefore, I have taken the liberty of scheduling depositions of John Grennon,
John Ellis and Tim Turley for those dates. Notices to that effect were faxed and mailed
to your office today. The Sheriff is available to be deposed on November 27, and the
afternoons of November 28 & 29, 2006. Please contact me ASAP to confirm one of
those dates as her schedule fills up quickly.

Finally, please contact me regarding my correspondence of October 5, 2006 to discuss
the responsive documents identified therein that have been withheld by the Plaintiffs as
well as the subpoena served on JOEASC on April 13, 2006.

Very truly yours,

Ellen M. Caulo



# Suffolk County Sheriff's Department



|  |  |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
SHERIFF

**BY FAX AND U.S. MAIL**
December 5, 2006

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    Bergeron et al., v. Cabral
       United States District Court C.A. No. 05-11661-RGS

Dear Attorney Pfaff:

Per our phone conversation this morning, the depositions of plaintiffs Eric Dilibero and Paul Giglio have been cancelled at your request. Although you indicated that you were just advised that you are scheduled to begin a criminal trial tomorrow in Taunton, the depositions of Dilibero and Giglio were previously scheduled and confirmed by phone and letter on November 27, 2006. If there is any cost associated with the late cancellation it will be assessed against your clients.

As I informed you previously, I wish to complete all the depositions by the end of December. The recent cancellations may make that difficult and may necessitate an extension of the discovery deadline. Additionally, please produce the outstanding discovery (tax returns for all plaintiffs, mental health and treatment records for plaintiff Bergeron, list of Department employees who attended the fundraiser hosted by plaintiff Moscone, documents responsive to the JOEASC subpoena served on April 13, 2006, appointment calendars possessed by all plaintiffs documenting details and overtime shifts worked) identified in prior correspondence. I would prefer not to have to file a Motion to Compel.

Per your suggestion, the continuation of the Barnes deposition will be tentatively scheduled for Thursday (12/7) at 2:00 p.m. The deposition of plaintiff Peneau is confirmed for Friday (12/8) and I have rescheduled the deposition of plaintiff Dilibero for Friday (12/8) afternoon at 1:30 p.m. In order to complete both of the depositions on Friday, I propose starting with Peneau at 9:30 a.m.

Finally, the depositions of plaintiffs Turley and Grennon are confirmed for Wednesday, December 13, 2006 and Thursday, December 14, 2006 respectively.

Please contact me immediately if I have not accurately recounted our conversation regarding the scheduling of the remaining depositions.

Very truly yours,

Ellen M. Caulo

Enc.



## Suffolk County Sheriff's Department



ANDREA J. CABRAL
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

**BY FAX AND U.S. MAIL**
December 8, 2006

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    Bergeron et al., v. Andrea Cabral
       United States District Court C.A. No. 05-11661-RGS

Dear Attorney Pfaff:

At your request, the deposition of Plaintiff Erik Dilibero that had been previously scheduled and confirmed for today, December 8, 2006, has been cancelled. Instead, only the deposition of Plaintiff William Peneau will go forward.

Yesterday you informed me that Plaintiff Tim Turley is in Guatemala and will not return for several weeks. As you know the deposition of Mr. Turley is scheduled for Wednesday December 13, 2006. That date had been previously scheduled and confirmed by phone and letter on December 5, 2006. Please advise me when Mr. Turley is scheduled to return so that I may re-notice his deposition.

Since the December 13, 2006 date is now available, I will re-notice Mr. Ellis' deposition for that date.

As I have informed you previously, I wish to complete all the depositions by the end of December. The recent cancellations may make that difficult and may necessitate an extension of the discovery deadline. Additionally, please produce the outstanding outstanding discovery (tax returns for all plaintiffs, mental health and treatment for plaintiff Bergeron, list of Department employees who attended the fundraiser hosted by plaintiff Moscone, documents responsive to the JOEASC subpoena served on April 13, 2006, appointment calendars possessed by all plaintiffs documenting details and overtime shifts worked).

Thank you for your attention to these matters.

Very truly yours,

Ellen M. Caulo



## *Suffolk County Sheriff's Department*



|  |  |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
SHERIFF

**BY FAX AND U.S. MAIL**
December 14, 2006

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA  02110

RE:   Bergeron et al. v. Andrea Cabral
      United States District Court C.A. No. 05-11661-RGS

Dear Attorney Pfaff:

Per our phone conversation on Monday, December 11, 2006, the deposition of John Ellis, renoticed for December 13, 2006 was cancelled because you informed me that his wife just had a baby.  Similarly, you canceled the deposition of John Grennon, previously scheduled and confirmed for December 14, 2006, because Mr. Grennon was at training.  Instead, Plaintiffs Erik Dilibero and Paul Giglio were deposed on Wednesday, December 13, 2006.  Both of those depositions were suspended because you have failed to produce their income tax returns previously requested.  Upon receipt and review of those documents, I will advise you if additional questioning is necessary.

During his deposition yesterday, Plaintiff Dilibero reviewed pocket calendars to refresh his memory as to specific incidents and dates.  As those are responsive to Defendant's First Request for Production of Documents, I ask that they be produced immediately.  Additionally, Mr. Dilibero testified regarding emotional stress related to the decommissioning and stated that he and his wife are currently engaged in marriage counseling.  Those records are also responsive and I request that they be produced immediately.  Finally, Mr. Dilibero testified that he owned and operated a Laundromat in East Boston during the period of time that he was on workers' compensation in 2003-2004.  Please produce all records pertaining to the purchase and sale of the Neptune Laundromat and income earned.

During Mr. Giglio's deposition, he testified that his doctor is treating him for physical symptoms of stress that he alleges are related to his decommissioning.  Please produce those medical records, as they are responsive to the Defendant's First Request for Production of Documents.

Finally, please provide me with dates to complete the remaining depositions of John Ellis, John Grennon and Tim Turley.

Very truly yours,

Ellen M. Caulo



# Suffolk County Sheriff's Department



| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF

January 8, 2007

**BY FACSIMILE AND U.S. MAIL**

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    **Bergeron et al., v. Andrea Cabral, Individually and as Sheriff of Suffolk
       County, C.A. No. 05-11661RGS**

Dear Attorney Pfaff:

I am in receipt of your letter dated January 8, 2007 concerning outstanding discovery
issues. I must say that I am deeply troubled by your response and your failure to produce
documents that were requested months ago and are, in any event, clearly responsive to
the Defendant's First Request for Production of Documents that was served on May 18,
2006. Indeed, when we spoke last week concerning the issue of outstanding discovery,
you requested that I give you until Monday, January 8, 2007, to **produce** the documents.
Instead, with the exception of Plaintiff Bergeron's counseling records[1], all you have
provided is a **promise** to produce the documents with the explanation that you have
requested the documents from your clients. With the deadline for discovery approaching
at the end of the month, this is entirely unacceptable.

Plaintiff Moscone was deposed on September 27, 2006. During the deposition, Moscone
testified that he possessed a list of the Department employees who attended the fundraiser
he hosted for Stephen Murphy in September 2004. (Moscone Deposition, pg. 106, lines
23-24). By letter dated October 20, 2006 I requested that the list be produced. Moscone
also testified that he might have calendars documenting the details he worked as a Deputy
Sheriff prior to his decommissioning. By letter dated October 5, 2006, I requested that
those calendars be produced. To date neither the list nor the calendars have been
produced.

---

[1] Plaintiff Bergeron was deposed on October 4, 2006. By letter dated October 5, 2006, I requested that his
mental health counseling and treatment records be produced immediately. Despite numerous phone calls
and letters requesting said records, they were not produced until today.

1

1em

Plaintiff Lynch was deposed on October 6, 2006. During his deposition he testified that he had calendars documenting when he performed details as a Deputy Sheriff between 2000 and 2005. (Lynch Deposition, pg. 169, lines 4-11). I made a verbal request during the deposition that Lynch produce those calendars. (Lynch Deposition, pg. 171, lines 4-7). Despite numerous phone calls and subsequent correspondence (see letters dated December 5 & 8, 2006), the calendars have yet to be produced.

Plaintiffs Dilibero and Giglio were deposed on December 13, 2006. During Dilibero's deposition he utilized pocket calendars to refresh his recollection as to specific incidents and dates. I verbally requested that copies of the calendars be produced, which was followed by a written request dated December 14, 2006. In that same letter I also requested that Plaintiff Dilibero produce his marriage counseling records and records pertaining to his ownership and operation of the Neptune Laundromat. Despite subsequent conversations, these records have yet to be produced.

During Plaintiff Giglio's deposition, he testified that he was treating with a medical doctor for physical symptoms of stress that he alleges are related to his decommissioning. I requested those records by letter dated December 14, 2006 and to date have not received them. While I sympathize with Mr. Giglio's loss of his father, these records were requested almost one month ago. I note that Defendant's First Request for Production of Documents, served on May 18, 2006, requested the production of tax records for all the plaintiffs, including Mr. Giglio. To date the plaintiffs' response has been deficient.

Finally, I do not believe that all documents responsive to the subpoena served on JOEASC on April 13, 2006 have been produced.

With respect to our agreement pertaining to the number of admissions I intend to serve, my recollection is that we agreed on the total number of 100, not the number I could serve per plaintiff.

Please produce all outstanding discovery immediately along with a detailed explanation for the delay. In the event that discovery is not received by noon on Friday, January 12, 2007 I will file a Motion to Compel, seeking costs.

Very truly yours,

Ellen M. Caulo

2




## Suffolk County Sheriff's Department



ANDREA J. CABRAL
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

April 2, 2007

**BY FACSIMILE AND U.S. MAIL**

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    **Bergeron et al., v. Andrea Cabral, Individually and as Sheriff of Suffolk
County, C.A. No. 05-11661-RGS**

Dear Attorney Pfaff:

As a follow up to our telephone conversation this morning, I have reviewed the Plaintiffs'
responses to the Defendant's Request for Admissions and have concluded, pursuant to
Fed.R.Civ.P. 36, that the following responses are deficient:

| | |
|---|---|
| Bergeron: | 2, 3, 6, 7(3), 8, 10, & 11; |
| Lynch: | 1, 2, 3, 4, 6, 7, 8, 9, & 10; |
| Peneau: | 1, 2, 3, 5, 6(a) & (b), 7, 9, & 10; |
| Giglio: | 1, 4, 5 (b), (c) & (b)(sic), & 6. |
| Dilibero: | 1, 2, 3, 4, 5 (a), 6, 8, & 9; |
| Moscone: | 1, 2, 5, 6, 7, & 8. |

Please review the specific requests and responses and contact me to discuss. If we are
unable to come to a resolution, I intend to file a motion with the Court to determine the
sufficiency of the answers provided and objections raised.

Answers to the Defendants interrogatories served on February 1, 2007 are past due.
Further, the handwritten notes prepared by Mr. Grennon concerning his April meeting
with Sheriff Cabral and thereafter provided to Attorney Condon have not been produced
nor have copies of all W-2, 1099, and other forms, schedules or attachments to Mr.
Grennon's federal and state income tax records.

1

The **promise**[1] to produce records pertaining to Mr. Dilibero's marriage counseling and ownership of the Neptune Laundromat, as well as Mr. Giglio's federal and state income taxes and physical symptoms of stress has not been realized.

Finally, Mr. Barnes was deposed as the JOEASC 30(b)(6) representative on March 28, 2007. Although he was designated as the person in the best position to testify as to the topics set forth in Schedule A, attached to the Notice of Deposition, it was clear from his testimony that he had not spoken with anyone nor reviewed any documents and accordingly, was not prepared to testify. Indeed, he admitted that all he did to prepare for his testimony as the JOEASC 30(b)(6) representative was to "briefly review [Schedule A] last night for the first time." (Deposition of John Barnes, March 28, 2007, pg. 6, lines 9-24; pg. 7, lines 1-14)

However, Mr. Barnes did testify that during his tenure as President of JOEASC, union documents, including minutes of meetings, correspondence, and financial records were stored in locker 220 at the NSJ and at Merrick, Louison & Costello. To date, none of those documents have been produced. Additionally, Mr. Barnes testified that he used his own personal computer to conduct union business and may have copies of emails, documents and correspondence relevant to the issues in this litigation. Please produce all responsive documents immediately.

Please contact me to discuss these matters at your earliest convenience.

Very truly yours,

Ellen M. Caulo

---

[1] In your letter of January 8, 2007 concerning the Plaintiffs' failure to produce relevant and responsive discovery, you stated that you were in the process of procuring this information and would supplement your response accordingly. Almost three months have passed and the documents have not been produced.

2



## Suffolk County Sheriff's Department



|  |  |
|---|---|
| Jail | House of Correction |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF

BY FACSIMILE AND U.S.MAIL

April 25, 2007

Stephen C. Pfaff, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

RE:    Bergeron et al., v. Andrea Cabral, Individually and as Sheriff of Suffolk
       County, C.A. No. 05-11661-RGS

Dear Attorney Pfaff:

I am in receipt of your letter dated April 17, 2007 regarding the Plaintiffs' ongoing obligation to supplement discovery requests. While I appreciate the effort to supplement, I would prefer however that the documents originally requested in May 2006, but not yet provided, be produced.

Thank you for providing the minutes of the April 9, 2003 JOEASC meeting and the documents pertaining to the Labor Management meetings of April and May 2003. I am puzzled however by the absence of any explanation for their admittedly late disclosure and why these documents were not previously located. Further, during John Barnes' testimony as the duly designated 30(b)(6) representative of JOEASC, he testified that union documents stored and maintained in locker #220 were turned over to Merrick, Louison & Costello sometime in 2006. This would be consistent with Mr. Ellis' testimony that upon the change in leadership of JOEASC in the fall of 2004, a "box of documents" was turned over to Merrick, Louison & Costello. You have failed to produce any of these documents referenced by your clients nor have you provided any explanation as to why their testimony on this issue is not truthful. Additionally, as I stated in my correspondence of April 2, 2007, Mr. Barnes testified that he used his own personal computer to conduct union business and may have copies of emails, documents and correspondence relevant to the issues in the litigation. Please produce all responsive documents immediately or an explanation as to why they cannot be produced.

It continues to be my position that the Plaintiffs' responses to the Admissions are deficient for the reasons I outlined in my correspondence dated April 2, 2007 and our

1

subsequent telephone conversation.  It is not my responsibility to identify each and every one of your clients' deposition answers that contradict their responses to the Admissions.  By way of example, it is disingenuous at best to issue a blanket denial to the Request for Admission that: "Erik Dilibero's role, as Vice President of Local 3643 was largely ceremonial and he had little or no responsibilities", in light of the following deposition testimony:

> Q:  Okay.  So what were your duties and responsibilities as Vice President of the local during that period of time?  What does that entail?  What do you do?
>
> A:  Good question.
>
> Q:  What do you do?
>
> A:  Pretty much nothing.  At the time Captain Sheehan was President.  He pretty much did all the work—basically fell into the Vice Presidency and showed up at a meeting, and they were nominating people and no one showed up and I was there, and they said pretty much do you want to do it and I said, yes, sure,--why not- - not that there was much to do for the white shirts at that time.  He did it- - Captain Sheehan did everything.  Any meetings or any things that I have gone to is like some AFSCME seminars—that is about it.  I didn't really do anything. (p. 103, lines 12-24; p. 104, lines1-6).
>
> Q:  Is it fair to say that your activity on behalf of the union was primarily ceremonial- - I mean you didn't have a lot of responsibilities to do?
>
> A:  That is pretty much how the presidents ran it back then.  So it was ceremony- - figure head. (p. 107, lines 2-8).

Further, the admissions that were provided have yet to be signed by your clients.  I agreed to allow you a few days to secure their signatures based upon your representation that you would be able to do so by Wednesday, March 28.  Given that they have yet to be signed, in addition to my previously stated objections, I will file a motion with the Court challenging the validity of the responses and requesting that the Requests for Admissions be deemed admitted.  Finally, Requests for Admissions were served on Plaintiff Turley on March 15, 2007.  To date, no responses have been filed and consequently they are deemed admitted per Fed.R.Civ.P.36.

The answers to interrogatories are long overdue.  Your contention that the interrogatories concern topics explored in deposition, and therefore you are not obligated to answer them

2

is unavailing. The failure to provide responses to the interrogatories in a timely manner is subject to sanctions pursuant to Fed.R.Civ.P.37.

I have copies of your clients' personnel files and, as I stated months ago, will provide them to you upon receipt of a signed release.

Please contact me to discuss these matters at your earliest convenience.

Very truly yours,

Ellen M. Caulo

3

1

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF MASSACHUSETTS

3

4     Volume: I

5     *************************************
      DAVID BERGERON, ET AL,              :
6                    Plaintiffs,          :
      vs                                  :
7     ANDREA CABRAL,                      :
                     Defendant.           :
8     *************************************

9          DEPOSITION OF TIMOTHY TURLEY, a

10    witness called on behalf of the Defendant,

11    taken pursuant to the applicable provisions of

12    the Massachusetts Rules of Civil Procedure,

13    before William M. Jackson, Professional Court

14    Reporter and Notary Public in and for the

15    Commonwealth of Massachusetts, at the Nashua

16    Street Jail, 200 Nashua Street, Boston,

17    Massachusetts  02114, on January 9, 2007,

18    commencing at 10:20 a.m.

19

20

21          COPLEY COURT REPORTING, INC.
               59 Batterymarch Street
22         Boston, Massachusetts  02110
                 (617) 423-5841
23             www.copleycourt.com

24

11

1        lawsuit obviously -- strike that.

2                What notes do you have pertaining to

3        the incidents that form the basis for this

4        lawsuit that involved you?

5    A.  Physical notes would be contained, written

6        notes would be in the George McCallum file and

7        another file that resulted in my discipline.  I

8        have those at home.  I have an e-mail file that

9        has several communications with counsel and

10       some other union officials titled "Lawsuit."

11       There is numerous electronic files in there.

12       Not all of them pertain.

13   Q.  That is something that you and your counsel can

14       review.  There is an outstanding discovery

15       request that was filed in May, and I don't have

16       that in front of me, but my sense is that some

17       of the documents that you are talking about now

18       are responsive to that.  Has a request been

19       made directly to you to turn over any

20       documents?

21   A.  Not directly.

22   Q.  Indirectly?

23   A.  Some of the other people, parties to this suit

24       told me that some documents were requested, but

12

```
1              nothing specifically of me has been requested
2              other than my appearance, of course, today.
3         Q.   And those conversations that you have had with
4              some of your fellow plaintiffs have occurred
5              around depositions, and as a result of
6              depositions, requests were made for documents,
7              is that fair?  I am trying to get a sense of
8              when it was that you became aware that
9              documents were being requested.
10        A.   Probably in the summer.  There was a generating
11             interest about this suit.  I cannot say
12             specifically.
13                  MS. CAULO:  I am making a request for
14             any documents, notes, e-mails, electronic files
15             pertaining to communications, anything having
16             to do with the lawsuit that you and your fellow
17             plaintiffs have filed as well as the
18             allegations that directly involve you or any
19             other plaintiffs.
20                  THE WITNESS: You are making that
21             request now?
22                  MS. CAULO:  Yes.  I want it on the
23             record.  Thank you.
24        Q.   What is your date of birth, sir?
```

167

```
 1     A.   I don't know.  I didn't know that he was
 2          liaison for EAP.  There was an infectious
 3          control position he had.  Some sort of protocol
 4          officer that he had.  There was a dust up about
 5          that.  I don't know the nature of it exactly.
 6          He was removed from that position.  I don't
 7          know why.  My memory fails me.
 8     Q.   Did you produce your tax records, Corporal?
 9     A.   No.
10     Q.   I am actually just suspending the deposition
11          pending production of your tax records, which
12          has been requested, ongoing, for many months,
13          as well as the documents that I have requested
14          during the course of this deposition.  Has
15          anybody ever asked you for your tax records,
16          Corporal?
17     A.   No.  Barnes and Grennon mentioned that they had
18          to produce theirs, but nobody specifically
19          asked me for mine.
20               MS. CAULO:  Thank you.  We are done.
21               (Whereupon the deposition
22               suspended at 2:13 p.m.)
23
24
```

**ORIGINAL**

Volume:      1
Pages:       1 - 131
Exhibits:  See Index

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No: 1:05-CV-11661-RGS

DAVID BERGERON, JOHN GRENNON, LORNE LYNCH, JOHN )
BARNES, JOHN ELLIS, TIMOTHY TURLEY, AL MOSCONE, )
WILLIAM PENEAU, ERIK DILIBERO and PAUL GIGLIO,  )
                              Plaintiffs,  )
                                               )
                 v.                            )
ANDREA CABRAL, INDIVIDUALLY and as SHERIFF OF  )
SUFFOLK COUNTY,                                )
                              Defendant.  )
                                               )

DEPOSITION OF **ERIK P. DILIBERO**, a

Witness called on behalf of the Defendant, taken

pursuant to the applicable provisions of the

Massachusetts Rules of Civil Procedure, before

Maureen Nashawaty, a Notary Public within and for

the Commonwealth of Massachusetts, held at the

offices of the Suffolk County Sheriff's

Department, 200 Nashua Street, Boston, MA, on

Wednesday, December 13, 2006, commencing at 10:15
a.m.

*COPLEY COURT REPORTING, Inc.*
58 Batterymarch Street
Boston, Massachusetts   02110
(617) 423-5841

**DISK ENCLOSED**

67

```
1    dollar bills in, take the dollars bills out of
2    the machine I might have done that.  I am not
3    sure.
4         Q.    What is the name of the laundromat?
5         A.    Neptune Laundromat.
6         Q.    What is the address?
7         A.    Good question.  (Check I wouldn't say
8    answer (Good question, I can't think of it right
9    now.  I would have to go back down to see that.
10        Q.    When did you sell it back to your
11   father?
12        A.    I'm not sure of the date.
13        Q.    Was there income associated with your
14   running of the laundromat?
15        A.    Yes.
16        Q.    Do you fill taxes on that?
17        A.    Yes.
18             MS. CAULO:  Have I received
19   Mr. Dilibero's tax returns?
20             MR. STEWART:  I can find out for you
21   but I'm not sure.
22        Q.    Sergeant, do you know whether or not
23   you have turned them over to your counsel?
24        A.    No, I haven't.
```

COPLEY COURT REPORTING

68

1      Q.    Okay?

2            MS. CAULO:  I have requested them

3      several months ago so when we finish today we

4      will suspend pending the production of those

5      documents.

6            THE WITNESS:  Okay.  Actually

7      probably you would have a copy of the earnings

8      because on the workmen's Comp. they sent me

9      something, and I put it in there of what I

10     earned.

11     Q.    So there is some record here at the

12     department in terms of the moneys that you earned

13     while operating the laundromat?

14     A.    Correct.  I know they sent me

15     something, have you made any money or whatever.

16     Q.    Was the department aware that you owned

17     the laundromat during the period of time that you

18     were out on Comp.

19     A.    I don't know.

20     Q.    You didn't inform them?

21     A.    No.

22            MS. CAULO:  Just a note for you, rob,

23     I will be requesting all of the records

24     pertaining to the purchase and sale of the

COPLEY COURT REPORTING

125

1    mental health treatment as a result of the

2    allegations in your complaint?

3         A.    No.

4         Q.    Have you received any mental health

5    treatment in the last five years?

6         A.    Describe mental health treatment.

7         Q.    Well, have you gone to a psychiatrist,

8    a social worker, a psychologist?  Have you

9    received any form of counseling?

10        A.    I have been to a marriage counselor and

11   that is pretty much part of all of this too.

12        Q.    Well, what impact, if any, have the

13   allegations in your complaint had your on

14   marriage?

15        A.    I have been working more, not seeing my

16   family, more agitated about this stuff, fear, you

17   know, being in fear, I used to stay up nights.

18        Q.    Are you currently in marriage

19   counseling?

20        A.    Yes.

21        Q.    Okay.  Are you receiving any medication

22   for any of this emotional distress that you have

23   talked about?

24        A.    No.

COPLEY COURT REPORTING

1

1                      Volume 1

                       Pages 1-162

2                   Exhibits per index

3

            UNITED STATES DISTRICT COURT

4

              DISTRICT OF MASSACHUSETTS

5

6         Civil Action No. 05-CV-11661-RGS

7

8     -----------------------------:

                           :

9   Bergeron, et al          :

               Plaintiff,    :

                            :

10   V.                             :

                            :

11   Andrea Cabral            :

              Defendant.    :

12     -----------------------------:

13

14

15            DEPOSITION OF DAVID BERGERON, a witness called on behalf of the Defendant taken pursuant to the Federal Rules of Civil Procedure, before Patricia M. Haynes, a Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, CSR No.: 14620F, at the Offices of Suffolk County Sheriff's Department, 200 Nashua Street, Boston, Massachusetts, on Wednesday, October 4, 200, commencing at 10:15 a.m.

16

17

18

19

20

21

22           Copley Court Reporting

              101 Tremont Street

23       Boston, Massachusetts   02108

              (617) 423-5841

24

145

```
 1          A.   I don't know.

 2          Q.   Any of the captains think of you in a negative

 3     light?

 4          A.   I don't believe so.

 5          Q.   Have you made any mistakes on the job between

 6     April of '05 and today's date?

 7          A.   I believe we all have.

 8          Q.   Have you been disciplined for any of these

 9     mistakes?

10          A.   No.

11          Q.   Have you received any treatment for any

12     emotional pain or distress?

13          A.   From this?

14          Q.   Yes.

15          A.   No.

16          Q.   Any mental health treatment?

17          A.   I do receive mental health treatment.

18          Q.   As a result of this?

19          A.   It doesn't help.

20          Q.   As a result of this?

21          A.   As a result of this, no.

22          Q.   When did you begin receiving mental health

23     treatment?

24          A.   I don't know what year it was.  It was five or
```

146

1    six years ago I think.

2        Q.    Do recall how often you go?  When did you

3    begin going?

4        A.    Generally once a month.

5        Q.    What is the title of the person that you see,

6    is it a psychiatrist, licensed clinical social worker,

7    psychologist?

8        A.    Psychiatrist and a therapist.

9        Q.    Do you discuss issues relating to the loss of

10   your deputy sheriff status?

11       A.    I've discussed this lawsuit.

12       Q.    With both of these individuals, the two

13   different individuals?

14       A.    Yes.

15       Q.    Do you see each one of them once a month?

16       A.    The psychiatrist less.  The therapist once a

17   month usually.  The psychiatrist maybe three times a

18   year.

19       Q.    Have you gone more frequently to either of

20   these professionals since you were decommissioned in

21   April of '05?

22       A.    I think it's remained the same.

23       Q.    Have you been prescribed any medication by

24   either of these individuals since April of 2005?

**ORIGINAL**    1

Volume:     1
Pages:      1 – 124
Exhibits:   See Index

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No: 1:05-CV-11661-RGS

DAVID BERGERON, JOHN GRENNON, LORNE LYNCH, JOHN )
BARNES, JOHN ELLIS, TIMOTHY TURLEY, AL MOSCONE, )
WILLIAM PENEAU, ERIK DILIBERO and PAUL GIGLIO,  )
                        Plaintiffs,        )
            v.                                   )
ANDREA CABRAL, INDIVIDUALLY and as SHERIFF OF   )
SUFFOLK COUNTY,                                 )
                     Defendant.         )

DEPOSITION OF **PAUL A. GIGLIO**, a Witness

called on behalf of the Defendant, taken pursuant

to the applicable provisions of the Massachusetts

Rules of Civil Procedure, before Maureen

Nashawaty, a Notary Public within and for the

Commonwealth of Massachusetts, held at the

offices of the Suffolk County Sheriff's

Department, 200 Nashua Street, Boston, MA, on

Wednesday, December 13, 2006, commencing at 1:30

p.m.

**COPLEY COURT REPORTING, Inc.**
58 Batterymarch Street
Boston, Massachusetts  02110
(617) 423-5841

COPLEY COURT REPORTING          **DISK ENCLOSED**

113

1      decommissioned?

2           A.     No.

3           Q.     Have you sought any -- have you sought

4      any treatment?

5           A.     No.

6           Q.     Have you suffered any physical

7      symptoms?

8           A.     Yes, I have.

9           Q.     What are those?

10          A.     I have talked to my doctor about it as

11     far as stress, the job, I have had chest pains

12     which he is watching me for.  He understands the

13     stress I am in at this job.  He understands the

14     stress I am in at home.  He understands the

15     stress I am in because of my back and he said if

16     it gets worse, I want to do a test.

17          Q.     Is it your testimony that these

18     symptoms of chest pain and stress are associated

19     with your decommissioning?

20          A.     Yes.

21          Q.     Has he prescribed any medication?

22          A.     No, I don't want medication for it.

23          Q.     Have you discussed any anti-anxiety

24     medication?

COPLEY COURT REPORTING

1

VOLUME:  I
PAGES:  1 through 231
EXHIBITS:  See Index

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-CV-11661-RGS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DAVID BERGERON, JOHN GRENNON,    )
LORNE LYNCH, JOHN BARNES,        )
JOHN ELLIS, TIMOTHY TURLEY,      )
AL MOSCONE, WILLIAM PENEAU,      )
ERIC DILIBERO and PAUL GIGLIO,   )
            Plaintiffs,          )
                                 )
                                 )
    vs.                          )      **ORIGINAL**
                                 )
ANDREA CABRAL, Individually and  )
as SHERIFF OF SUFFOLK COUNTY,    )
            Defendant.           )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEPOSITION OF JOHN ELLIS**, a witness called on
behalf of the Defendant, taken pursuant to the
Provisions of the Federal Rules of Civil
Procedure, before Julie A. Healey, a Certified
Shorthand Reporter, Registered Professional
Reporter, and Notary Public in and for the
Commonwealth of Massachusetts, at the offices of
the Suffolk County Sheriff's Department, 200
Nashua Street, Boston, Massachusetts, on
January 18, 2007, commencing at 10:08 a.m.

COPLEY COURT REPORTING
58 Batterymarch Street, Suite 317
Boston, Massachusetts 02110

COPLEY COURT REPORTING, INC.
(617) 423-5841

*DISK ENCLOSED*

78

1    ultimately responsible for making sure that the

2    T's were crossed and the I's were dotted, but.

3        Q.    How many drafts were done?

4        A.    Two or three.  Like I said, I think I

5    initially composed something, I guess it depends

6    what you consider a draft.  John had an incomplete

7    draft, I'm sorry, John Barnes, I had bullet points

8    from John Grennon, had my own notes.

9            That first creation based on all these

10   incomplete documents was something I put together.

11   It went through a few minor changes, once with

12   John Barnes and another time going through the

13   attorney's office, and I believe it was ready to

14   go after that.

15       Q.    Where were they written?

16       A.    I did my part at home on my home computer

17   on my off hours.

18       Q.    Well, I believe your testimony earlier

19   was you compiled the entire thing, so, was the

20   final draft written on your home computer?

21       A.    Yes.

22       Q.    Okay.  Do you have copies of the drafts?

23       A.    I gave everything up when we stepped

24   down.  I'm assuming, I hope they still have drafts

79

1    with the current, I know we switched hands a

2    couple of times since the end of 2004, but

3    everything I had -- again, by this point I was

4    looking to go back to work as I referred to

5    earlier.

6            I wasn't looking to take active part.

7    Everything I had I gave over.  It was a box I

8    think that ended up in the law office, and that

9    was it, so, I'm assuming everything I had at that

10   point is over there.

11       Q.    There is nothing on your hard drive?

12       A.    Nothing anymore, no.

13       Q.    When did you delete it?

14       A.    Shortly thereafter.

15       Q.    When is that?

16       A.    I don't know exactly what day.

17       Q.    Before or after you filed this lawsuit?

18       A.    Oh, well before that, yeah, shortly

19   after, once Mickey Walsh took over as president

20   and Robert Tullos as vice president, I made a

21   clean break with most of that.

22       Q.    Who had final approval in the content?

23       A.    The executive board, I received E-mails

24   saying this is good, this is good.  Once it

82

1   more talking notes, bullet points from John

2   Grennon and my own notes that I compiled at an

3   executive board meeting when they were sort of

4   tailored around discussion, and I think I got

5   input from Mickey Walsh and Robert Tullos at that

6   point and Mark Turley.

7        Q.   Were notes taken of general membership

8   minutes?

9        A.   Yes.

10       Q.   Was that your responsibility as

11  secretary?

12       A.   Yes.

13       Q.   Were notes taken of executive board

14  meetings?

15       A.   Most.  The meetings were declared more

16  informal because they were more interested in me

17  taking part of the meeting than writing down.  At

18  some point in '04, we were initially taking

19  executive board minutes as well.

20       Q.   And where are those minutes kept?

21       A.   I assume that the law office has them

22  now.

23       Q.   What did you do with them?

24       A.   When I made them at the time you mean?

83

1     Q.   Yes.

2     A.   We generated them, I usually gave copies

3  to everyone else on the executive board,

4  oftentimes via E-mail.  I kept the hard copy

5  myself, and all of that was passed along when we

6  stepped down.

7     Q.   And you passed them along to whom?

8     A.   I don't know, it might have been John

9  Barnes I gave the box to one day that was going to

10  the law office.

11         I didn't personally drop them off at the

12  law office, but I remember collecting a box of

13  documents I had at home from the time of my entire

14  tenure as it were that contained most of the

15  minutes and these sort of things.

16     Q.   Why did the box go to the law office?

17     A.   I'm sorry?

18     Q.   Why was the box delivered to the law

19  office?

20     A.   It was a matter of changing hands, and we

21  had to put it somewhere, and I think they were

22  willing to hold it but we were switching

23  administrations in the union.

24         We were no longer involved, and I just

COPLEY COURT REPORTING, INC.
(617) 423-5841

1

```
 1                      Volume 2
                        Pages
 2                      Exhibits per index

 3

           UNITED STATES DISTRICT COURT
 4
             DISTRICT OF MASSACHUSETTS
 5

 6         Civil Action No. 05-CV-11661-RGS

 7

 8     ------------------------------:
                                     :
 9     Bergeron, et al               :
                        Plaintiff,   :
                                     :
10     V.                            :
                                     :
11     Andrea Cabral                 :
                        Defendant.   :
12                                   :
       ------------------------------:
13

14

15              CONTINUED DEPOSITION OF JOHN GRENNON, a
       witness called on behalf of the Defendant taken pursuant
16     to the Federal Rules of Civil Procedure, before Patricia
       M. Haynes, a Certified Shorthand Reporter and Notary
17     Public in and for the Commonwealth of Massachusetts, CSR
       No.: 14620F, at the Offices of Suffolk County Sheriff's
18     Department, 200 Nashua Street, Boston, Massachusetts, on
       Monday, February 26, 2007, commencing at 10:00 a.m.
19

20

21

22

                  Copley Court Reporting
23            58 Batterymarch Street, Suite 317
                Boston, Massachusetts  02110
24                    (617) 423-5841
```

ORIGINAL

202

1     A.    That he could take our houses.

2     Q.    Was that on your way out?

3     A.    Oh, yes.

4     Q.    Did Mr. Sumpter say anything?

5     A.    I don't recall.

6     Q.    Did you take any notes during it?

7     A.    I don't believe so.

8     Q.    Did you take any notes afterwards?

9     A.    I did.

10    Q.    Where are those notes?

11    A.    Dave Condon might have them.  We had called,

12    when we left here, as soon as we hit the front door, we

13    called Merrick, Louison & Costello on the cell phone,

14    Dave Condon specifically, and told him what had just

15    happened.

16          My specific concern was being fired, and my

17    second concern I told him was going to jail.  And my

18    third concern was losing any assets that I had.  Dave

19    was very upset.  He got Doug Louison and Steve Pfaff on

20    the phone.

21          MR. STEWART:  Stop right there.  Don't

22    reveal things that took place between you and your

23    attorneys.

24    BY MS. CAULO:

203

1        Q.    I asked you if you took any notes?

2        A.    I sent them what happened in the conversation.

3    I sent them a brief paragraph on what happened at the

4    meeting.

5        Q.    When you say sent them?

6        A.    Dave Condon

7             MS. CAULO:  It's clearly discoverable,

8    Rob.  I'm sure it falls within prior discovery requests.

9    I'll make an official request for it now.  But any and

10   all notes written by Lieutenant Grennon concerning this

11   meeting is something that needs to be turned over.

12            MR. STEWART:  I'll bring it up to them.

13   BY MS. CAULO:

14       A.    I can assure you that Attorney Pfaff doesn't

15   know that exists.

16       Q.    Why can you assure me of that?

17       A.    Because he asked us for all notes that we had

18   for this case and if we had any e-mails and what not,

19   and I would have presented it to him.  If there's a

20   disconnect here, that's my fault.  I will look for it,

21   but I sent it to Dave Condon aside from the case.  It

22   was more of --

23       Q.    Are there any other notes or documents or

24   writings that you have that you didn't feel fell within

204

1    the request from Attorney Pfaff that now you feel that

2    do?

3              MR. STEWART:  Objection.  If there's

4    answerable material, we'll provide it obviously.

5    BY MS. CAULO:

6        A.    No.

7        Q.    Did Mr. Barnes prepare any notes?

8        A.    You'd have to ask Mr. Barnes.

9        Q.    In your presence did Mr. Barnes prepare any

10   notes?

11       A.    I didn't see him prepare any notes.

12       Q.    To your knowledge, did Mr. Ellis prepare any

13   notes of his meeting with the sheriff?

14       A.    I have no knowledge of his meeting.

15       Q.    Other than yourself and Mr. Ellis and Mr.

16   Barnes, did the sheriff ask to meet with any other union

17   officials regarding these meetings to your knowledge?

18       A.    I don't know.

19       Q.    To your knowledge, did either Mark or Tim

20   Turley meet with the sheriff concerning these meetings?

21       A.    I don't know.

22       Q.    This is a Complaint that you and your

23   colleagues filed in this matter, correct?

24       A.    Yes.

1

```
 1              UNITED STATES DISTRICT COURT

 2              DISTRICT OF MASSACHUSETTS


 3

 4     Volume: II

 5     ****************************************
       DAVID BERGERON, ET AL,              :
 6                      Plaintiffs,        :
       vs                                  :
 7     ANDREA CABRAL,                      :
                        Defendant.         :
 8     ****************************************

 9              DEPOSITION OF JOHN BARNES, a witness

10     called on behalf of the Defendant, taken

11     pursuant to the applicable provisions of the

12     Massachusetts Rules of Civil Procedure, before

13     William M. Jackson, Professional Court Reporter

14     and Notary Public in and for the Commonwealth

15     of Massachusetts, at the Nashua Street Jail,

16     200 Nashua Street, Boston, Massachusetts

17     02114, on December 7, 2006, commencing at 2:00

18     p.m.

19

20

21              COPLEY COURT REPORTING, INC.
                    101 TREMONT STREET
22              BOSTON, MASSACHUSETTS  02108
                     (617) 423-5841
23                  www.copleycourt.com

24
```

ORIGINAL

DISK ENCLOSED

68

```
 1          negotiate a contract after my, after my term
 2          expired.
 3     Q.   To your knowledge, did Mickey Walsh in his
 4          capacity as president and Robert Tool as vice
 5          president, act on behalf of JOEASC in dealing
 6          with the department after you left as
 7          president?
 8     A.   Yes.
 9     Q.   Is it fair to say as elected representative of
10          JOEASC, they engaged in union activity?
11     A.   Yes.
12     Q.   Ultimately, a contract was ratified after their
13          negotiations with the department; is that
14          correct?
15     A.   Yes.
16     Q.   We touched briefly on the last time we were
17          together.  It had to do with union records.
18          What types of documents or records were kept by
19          JOEASC, categories of things I am talking
20          about?
21               MR. PFAFF:  Objection.  When?
22     Q.   During the period of time that you were
23          president, from 2003 to 2005, what kind of
24          document records before kept or maintained by
```

69

```
1           JOEASC?

2    A.     Anything that was, I believe anything that was

3           correspondence that would be directed to

4           JOEASC.  Minutes of meetings, minutes of

5           contract negotiations.  Minutes of general

6           membership meetings.  I can't recall any

7           others.  Documents that we may have.

8    Q.     Who maintained them during the period of time

9           that you were president?

10   A.     I want to say most of the documents were

11          maintained by John Ellis, the secretary.  I

12          know there has been numerous transitions.  I

13          know we utilized the law firm for storage, for

14          documents, grievance, that is another thing

15          that we maintain, grievances.  Arbitration

16          cases.  Stuff like that.  Legal actions that

17          may have been filed in our file, and I know the

18          law firm had a lot of stuff stored there, and I

19          believe we were utilizing a locker, an empty

20          locker in the locker room for storage at one

21          time.  That stuff was transitioned over to the

22          next union officials coming in who in turn

23          would be turned over to the next union

24          officials.
```

70

```
 1    Q.   What happened with respect to union officials
 2         that came in that was maintained by the
 3         leadership that was leaving?
 4    A.   This is where the stuff is stored, if you need
 5         access to anything, this is where the
 6         grievances are at, this is what, we have this
 7         locker for stuff stored in there, the law firm
 8         had stuff stored.  It would be word of mouth on
 9         a transition process, I believe.  At least what
10         I did with Mike Walsh, indicating where certain
11         things were at.
12    Q.   To your knowledge, is that locker still being
13         utilized?
14    A.   No.  I believe everything was moved out of that
15         locker and may have been turned over to, I am
16         only speculating, may have been turned over to
17         Attorney Condon and Attorney Pfaff's office.
18    Q.   When was that?
19    A.   I don't recall.
20    Q.   Was it before or after, was it during your
21         tenure as president of JOEASC?
22    A.   No.  During my tenure, everything was where it
23         was at.  It was in the locker or up at the law
24         firm.  Other than that, I don't recall
```

71

```
 1              specifically.  I don't have knowledge
 2              specifically of how Mike Walsh and John Grennon
 3              might have exchanged documents or how they
 4              transitioned.
 5      Q.      But the locker no longer has any documents in
 6              it currently?
 7      A.      The last I checked, the only thing that may
 8              have been in there is contract books and
 9              calendars.
10      Q.      When was the last time that you checked?
11      A.      Like a week ago.
12      Q.      What caused you to go check that?
13      A.      I needed to pass out some calendars and Chris
14              Mills informed me that it was inside that
15              locker.  So I went to that locker.
16      Q.      Is that on the first floor, is that here in the
17              building?
18      A.      Yes.  It is down in the officers locker room.
19      Q.      Were there any records kept regarding the
20              mailing, Exhibits 5 through 9, that were put up
21              by JOEASC before the election?
22      A.      I believe that would have all been in there.  I
23              know we did not throw it out.  I would assume
24              it would all be in that transition.
```

1

VOLUME:  I
PAGES:  1 through 141
EXHIBITS:  See Index

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-CV-11661-RGS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DAVID BERGERON, JOHN GRENNON,    )
LORNE LYNCH, JOHN BARNES,        )
JOHN ELLIS, TIMOTHY TURLEY,      )
AL MOSCONE, WILLIAM PENEAU,      )
ERIC DILIBERO and PAUL GIGLIO,   )
                Plaintiffs,      )
                                 )
      vs.                        )
                                 )      **ORIGINAL**
ANDREA CABRAL, Individually and  )
as SHERIFF OF SUFFOLK COUNTY,    )
                Defendant.       )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEPOSITION OF JOHN BARNES**, a witness called
on behalf of the Defendant, taken pursuant to the
Provisions of the Federal Rules of Civil
Procedure, before Julie A. Healey, a Certified
Shorthand Reporter, Registered Professional
Reporter, and Notary Public in and for the
Commonwealth of Massachusetts, at the offices of
the Suffolk County Sheriff's Department, 200
Nashua Street, Boston, Massachusetts, on March 28,
2007, commencing at 10:03 a.m.

COPLEY COURT REPORTING
58 Batterymarch Street, Suite 317
Boston, Massachusetts 02110

COPLEY COURT REPORTING, INC.
(617) 423-5841

6

1          MS. CAULO:  And the usual

2    stipulations in terms of all objections except as

3    to form waived until time of trial, motions to

4    strike waived until time of trial, two weeks to

5    read and sign, waive the notary.

6          MR. STEWART:  Yes, thank you.

7          MS. CAULO:  Okay.

8    BY MS. CAULO:

9      Q.   I've already marked one exhibit, which is

10   the Notice of Taking Deposition, which is marked

11   No. 1, and No. 2 is the Schedule A.  Have you seen

12   Exhibit No. 2, Schedule A before today?

13     A.   Last night I reviewed it for the first

14   time briefly.

15     Q.   Last night?

16     A.   Yes.

17     Q.   Do you understand that you have been

18   designated by the Jail Officers and Employees

19   Association of Suffolk County, known as the

20   acronym JOEASC, J-O-E-A-S-C, as the best person to

21   testify on the topics set forth in Schedule A?

22     A.   Yes, I have.

23     Q.   And for all of these topics which are

24   Nos. 1 through 14 designated in the Schedule A,

7

1      are you prepared to testify as to these topics?

2          A.   I'll try my best.

3          Q.   Well, what did you do to prepare for this

4      deposition, Mr. Barnes?

5          A.   Briefly reviewed this last night for the

6      first time.

7          Q.   Did you speak with anybody, any members

8      of JOEASC in preparation for the topics that you

9      have been designated to speak on today?

10         A.   No, I haven't.

11         Q.   Did you review any documents in

12     preparation for your testimony concerning the

13     topics set forth in Schedule A?

14         A.   No, I have not.

15         Q.   Please describe the recordkeeping

16     practices of JOEASC from April 2003 to date.

17         A.   Um, in regards to recordkeeping in

18     regards to minutes of meetings or recordkeeping in

19     regards to where they're stored?

20         Q.   Everything.

21         A.   Uh, to the best of my knowledge when

22     there is a general membership meeting, an

23     executive board meeting, contract negotiations, we

24     would try to the best of our ability to maintain

COPLEY COURT REPORTING, INC.
(617) 423-5841

8

1    minutes for those meetings.

2          They would be posted on the membership

3    board, and for storage purposes we didn't have an

4    official office, as an independent union we were

5    just starting out, we didn't have the money at

6    that time to have an office, so, we didn't have

7    the storage capability to store everything.

8          We were utilizing a locker in the jail

9    for paperwork and any documents that we may have

10   that were being stored.

11       Q.   You mentioned minutes of meetings.  In

12   addition to minutes of meetings, were there any

13   records or documents that were kept by JOEASC?

14       A.   Um, I would say any official document

15   that was sent out on behalf of JOEASC or any

16   official document that was received that was

17   addressed to JOEASC would have been maintained.

18       Q.   All right.  Now, what documents are we

19   talking about, describe for me the kinds of

20   documents that you just referred to?

21       A.   Uh, I would say any demand to bargain

22   letters sent to the Department in regards to what

23   we, we perceived as maybe, you know, change in

24   terms or conditions of employment, any letters

COPLEY COURT REPORTING, INC.
(617) 423-5841

9

1    sent on behalf of employees, information requests
2    in regards to information trying to obtain for
3    grievances, arbitrations, any letters sent out to,
4    like, the Paul McLaughlin Fund to donate money to
5    charities and stuff like that, anything that we
6    receive from charitable places, um, requesting
7    donations, anything we receive from the Department
8    in regards to responses of letters that we sent
9    out, and right now that's off the top of my head
10   the best of my recollection.
11        Q.   Would there be financial records?
12        A.   Yes, there would be.
13        Q.   Would there be correspondence?
14        A.   Any correspondence, yes.
15        Q.   Correspondence that was either sent to or
16   received by the Department on behalf of the union
17   or to other unions --
18        A.   Yes.
19        Q.   -- and to state agencies?
20        A.   Yes.
21        Q.   Are there any bylaws of JOEASC that
22   pertain to recordkeeping?
23        A.   There is bylaws, and the only thing that
24   would, would possibly pertain to recordkeeping

10

1    would be Robert's Rules of Orders as listed in the

2    bylaws in regards to how a meeting would be, how a

3    meeting would be scheduled, how a meeting would be

4    practiced and order and keeping minutes of the

5    meeting.

6        Q.    What do those Robert's Rules of Orders

7    say with respect to keeping minutes of meetings?

8        A.    Um, hold on one second, I saw that

9    briefly.  Off the top of my head, I don't have an

10    answer for that right now unless I reviewed the

11    Robert's Rules of Orders since I haven't reviewed

12    that in, jeez, two or three years since I was in

13    that capacity.

14        Briefly, probably in the case that

15    minutes of prior meetings would be read to the

16    membership and something to that nature,

17    correspondences that were received would be read

18    to the membership, correspondences sent would be

19    read to the membership, the president's report,

20    the vice president's report.

21        I don't know the exact order where

22    everything lines up, but that's how meetings would

23    be, whether it was an executive board meeting or

24    general membership meeting, that's how they'd be

COPLEY COURT REPORTING, INC.
(617) 423-5841

11

1    conducted.

2        Q.    An E board meeting, which was the elected

3    leadership; is that right?

4        A.    Yes.

5        Q.    Or general membership meeting you would

6    conduct the meeting according to Robert's Rules of

7    Orders?

8        A.    Yes, during my time period.  I can't say

9    how the other administrations after me have

10   conducted it.

11       Q.    Well, I will remind you, Mr. Barnes, that

12   you are here as the 30(b)(6) representative of

13   JOEASC --

14       A.    I understand.

15       Q.    -- as to every single topic identified in

16   this Schedule A which includes the time period

17   from April of 2003 to date.

18       A.    I understand that.

19       Q.    Okay, and to that end, it was incumbent

20   upon you to gather the information so that you'd

21   be in a position to testify to the best of your

22   ability.

23           So, if I'm hearing you correctly, when

24   the meetings would be conducted if there was

12

1    correspondence that had been received or sent,

2    that would be read to the people --

3        A.   It would be presented to the people in

4    the audience, yes.

5        Q.   Try to wait until I finish even if you

6    anticipate where I'm going.

7        A.   I'm sorry.

8        Q.   Additionally, if there were minutes that

9    had been kept of the prior meetings, whether an

10   E board meeting or the general membership meeting,

11   they would be read to the assembled body?

12       A.   Correct.

13       Q.   And that would be either accepted or not

14   accepted?

15       A.   Yes, I believe that's, there would be a

16   motion on the floor to accept the minutes.

17       Q.   Okay.  Who was responsible for taking the

18   minutes of the general membership meetings?

19       A.   The executive secretary had the

20   responsibility of keeping minutes of meetings.

21       Q.   Who was responsible for keeping the

22   minutes of E board meetings, the same person or a

23   different person?

24       A.   The executive secretary.

14

1      Q.    You mentioned that there was a locker

2    that was utilized initially, when I say initially,

3    I'm referring to the time period beginning around

4    April of 2003 when JOEASC was first created.

5      A.    Yes.

6      Q.    Where is that locker located?

7      A.    Locker 220 in the employee's locker room.

8      Q.    For how long a period of time was locker

9    220 in the employee's locker room utilized as a

10   storage facility for the records that you have

11   described for JOEASC?

12     A.    Um, it was actually, that's where I ended

13   up maintaining some of the documents from Local

14   1134.

15          I don't recall who exactly told me that

16   was the location of them, but I got the

17   combination to that lock, and we actually added

18   stuff to that locker in regards to, even in

19   addition to the stuff they had in there.

20          I don't even know, I don't know if

21   they're currently utilizing that locker, I don't

22   have knowledge to that.

23     Q.    Okay.  You mentioned 1134, that was the

24   union that existed prior to the formation of

15

1    JOEASC, correct?

2        A.    Correct.

3        Q.    All right.  So, when JOEASC was formed,

4    you took over the locker that had been utilized by

5    1134?

6        A.    Yes.

7        Q.    And in addition to the materials that

8    were left there by 1134, you then added documents

9    that were accumulated during your tenure as

10   president of JOEASC?

11       A.    Correct.

12       Q.    My question for you is for how long a

13   period of time -- strike that.

14            Your tenure as president of JOEASC was

15   when?

16       A.    April of 2003 I believe until October of

17   2004 I believe.

18       Q.    Okay.  During that period of time, was

19   the locker 220 utilized?

20       A.    Yes.

21       Q.    Who was responsible for putting -- well,

22   what documents were stored in locker 220?

23       A.    Uh, I would say all pertinent documents

24   that we discussed earlier would be stored in that

16

1    locker, after acceptance or after posting on the
2    bulletin board, it would be removed from the
3    bulletin board and placed in the locker.
4        Q.    Was there a binder of minutes of
5    meetings?
6        A.    To the best of my recollection I don't
7    believe there was, no.  I think they were folders.
8        Q.    Manila folders are you referring to or
9    what kind?
10       A.    Manila folders (indicating), yes.
11       Q.    Which I've got here.
12       A.    Yes.
13       Q.    All right.  Who had access to that
14   locker?
15       A.    Everyone on the board of directors would
16   have access to that.
17       Q.    So, during the period of time of April
18   2003 to October of 2004, who would that be?
19       A.    Myself, John Grennon, Mark Turley, Robert
20   Tullos, Mike Walsh, John Ellis, am I missing
21   someone here?  Maybe Mike Cinelli, I think he
22   might have been a union rep, they would all have
23   authority and access into that locker.
24       Q.    In October of 2004 -- strike that.

17

1        When was the change in leadership of

2   JOEASC in the fall of '04?

3        A.   Change from, from my capacity as

4   president to Mike Walsh's capacity?

5        Q.   Correct.

6        A.   On or about October or November 2004.

7        Q.   What happened to the documents that were

8   stored in locker 220 after the change in

9   leadership?

10       A.   It was transferred over to Mike Walsh, I

11  gave basically the combination, everything and all

12  pertinent documents were told to him that they

13  were being stored in there.

14       I believe Timmy Turley had documents he

15  had in his possession that he was, had at home

16  that was ongoing that he ended up turning over

17  too, and John Grennon may have turned documents

18  over to him that he had in his possession as well

19  as myself that we were currently working on or

20  whatever we had because it was in our own lockers

21  because some of the stuff was in our own lockers

22  during that period of time, and what he did after

23  that I'm not sure.

24       I don't know if he kept it in 220, as far

COPLEY COURT REPORTING, INC.
(617) 423-5841

18

1   as I know, it was maintained in 220, it was

2   maintained during his term.

3       Q.   Have you had any conversations with

4   Michael Walsh concerning the use of locker 220

5   during his tenure as president of JOEASC?

6       A.   No, I have not.

7       Q.   Who was the recording secretary that came

8   into office after the fall of 2004?

9       A.   I want to say Stan Andruszkiewcz was the

10  recording secretary to the best of my knowledge.

11      Q.   Have you had any conversations with

12  Mr. Andruszkiewcz concerning his responsibilities

13  concerning the use of locker 220 as a storage for

14  union documents?

15      A.   I believe they purchased a laptop

16  computer, and I don't know if they were storing

17  the documents in there or keeping it on file in

18  the computer.

19           Stan hasn't been in, he's away on

20  vacation, I haven't had an opportunity to talk to

21  him in regards to that.

22      Q.   The next administration was whom?

23      A.   John Grennon.

24      Q.   Who else?

COPLEY COURT REPORTING, INC.
(617) 423-5841

19

1      A.   John Grennon, David Bergeron, Mike

2   Cinelli, Miguel Bueno, Chris Mills, Steven

3   Dedalonis, and Stan Andruszkiewcz I believe.

4      Q.   Did you have any conversation with any of

5   those individuals whom you have just identified

6   concerning the use of locker 220 as a storage for

7   union documents?

8      A.   Yes.

9      Q.   What was that conversation, with whom?

10     A.   It was with the leadership.

11     Q.   The leadership is not an individual, so,

12   tell me who you had a conversation with?

13     A.   Oh, sorry, it wasn't an individual per

14   se, I don't recall exactly which one, I know it

15   was with the JOEASC leadership.

16          When they took over, they, I informed

17   them that there still could be documents inside

18   that locker, and to the best of my recollection I

19   think that locker was cleared out, and Merrick,

20   Louison & Costello indicated we could store the

21   documents at their law firm because we didn't have

22   a proper storage area for them.

23          So, I believe that, to the best of my

24   recollection, I believe the documents were removed

COPLEY COURT REPORTING, INC.
(617) 423-5841

20

1   from there by David Bergeron and brought to

2   Merrick, Louison & Costello.

3       Q.   When was that?

4       A.   I, I couldn't tell you.  I have no idea

5   exactly when that was.

6       Q.   Well, when did you have the conversation?

7       A.   It was probably right during the transfer

8   of leadership, so, I would say April, sometime

9   April last year, 2006, April 2006.

10      Q.   What documents were turned over to the

11  law firm of Merrick, Louison & Costello?

12      A.   I have no idea.

13      Q.   Have you searched for any documents that

14  were turned over to Merrick, Louison & Costello?

15      A.   No, I have not.

16      Q.   Have you inquired as to whether or not

17  there are any documents over at Merrick, Louison &

18  Costello?

19      A.   No, I have not.

20      Q.   Have you had any subsequent

21  conversations, have you had any conversations with

22  Mr. Bergeron concerning what documents --

23      A.   No, I have not.

24      Q.   -- that he brought over to Merrick,

COPLEY COURT REPORTING, INC.
(617) 423-5841

21

1    Louison & Costello?

2        A.    Sorry, no, I have not.

3        Q.    In preparation for today's testimony, did

4    you inquire of Mr. Bergeron?

5        A.    No, I have not.

6        Q.    Other than that locker 220 which is

7    located in the employee locker room, is there any

8    other location that you are aware of that union

9    documents were stored at?

10       A.    Not that I'm aware.

11       Q.    And actually, I will qualify that

12   question, other than locker 220 and the law firm

13   of Merrick, Louison & Costello, are you aware of

14   any other location where union documents are

15   stored?

16       A.    Not that I'm aware.

17       Q.    What efforts have you taken to identify

18   whether or not there are any other locations where

19   documents would be stored?

20       A.    I have not.

21       Q.    Is there a union office?

22       A.    No, there is not.

23       Q.    At any point between 2003 and today's

24   date, has there been a union office that you are

COPLEY COURT REPORTING, INC.
(617) 423-5841

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BERGERON, et al,
           Plaintiff,

v.

ANDREA J. CABRAL
           Defendant.

Civil Action No. 05-CV-11661-RGS

**NOTICE OF TAKING DEPOSITION**

To:   Stephen C. Pfaff, Esq.
     Robert Stewart, Esq.
     Merrick Louison & Costello LLP
     67 Batterymarch Street
     Boston, MA  02110



Please take notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Andrea J. Cabral, by her counsel, will take the deposition upon oral examination of Jail Officers and Employees Association of Suffolk County ("JOEASC"). The deposition will take place on March 6, 2007 at 10:00 a.m. at the Nashua Street Jail, 200 Nashua Street, Boston, MA  02114. The deposition shall be conducted before a notary public or other officer authorized to administer oaths and shall be recorded by stenographic means. The deposition will continue from day to day until completed.

The subject matter upon which examination is requested is set forth in Schedule A, attached. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, JOEASC shall designate one or more officers, directors or managing agents, or other persons who consent to

testify on JOEASC's behalf, who are most knowledgeable about the subjects set forth in

Schedule A.

    You are invited to attend and examine the witnesses.


                                Respectfully submitted
                                For Defendant Andrea J. Cabral,
                                By her attorney,


                                Ellen M. Caulo
                                Deputy General Counsel
                                BBO# 545250
                                Suffolk County Sheriff's Department
                                200 Nashua Street
                                Boston, MA  02114
                                (617) 961-6681

Date: February 22, 2007

### Schedule A

DEFINITIONS AND INSTRUCTIONS



1.      "SCSD" means the Suffolk County Sheriff's Department, its officers, directors, employees, attorneys, superintendents, agents and representatives.

2.      "Cabral" means Andrea J. Cabral

3.      The term "person" means any natural person or any business, legal or governmental entity or association.

4.      The term "communication" means the conveyance of information in any form and by any means.

5.      The terms "concerning" or "concern" mean constituting, relating to, mentioning, discussing, evidencing, involving, depicting, describing, listing, consisting, referring to or connected with, relying upon, or in any way related to an indicated subject.

6.      The term "material involvement" means any significant, pertinent, relevant, or important association with, connection to, participation in, contribution to any matter.

7.      In construing these definitions and instructions: (i) the singular shall include the plural and the plural shall include the singular; (ii) the conjunctions "and" and "or" shall be read either disjunctively or conjunctively to as to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (iv) the word "any" shall be read to mean each and every; and (v) no request will be geographically limited, except where specified.

### Topics

1.      The record keeping practices of JOEASC from April 2003 to date, including all policies and procedures concerning the deletion, retention and storage of electronic information;

2.      The creation and maintenance of the JOEASC website from April 2003 to date, including (1) policies and procedures for posting information on behalf of JOEASC leadership; (2) policies and procedures concerning the deletion,

1

retention and storage of electronic information; (3) whether hard copies of electronic information were retained and/or stored and the location of same;

3. The identification of all persons responsible for maintaining minutes of union meetings, executive board meetings, executive session meetings, and board of director meetings from April 2003 to date, including (1) the practice of maintaining minutes of union meetings, executive board meetings, executive session meetings, and board of director meetings from April 2003 to date; (2) where said minutes of union meetings, executive board meetings, executive session meetings, and board of director meetings were kept and maintained from April 2003 to date; and (3) the current location of all minutes of union meetings, executive board meetings, executive session meetings; and executive board meetings from April 2003 to date.

4. The identification of all persons responsible for, and/or who had material involvement in the drafting of correspondence on behalf of JOEASC from April 2003 to April 2005, including the maintenance of maintaining the correspondence issued and/or received by JOEASC from April 2003 to April 2005.

5. The location of all correspondence kept and maintained by JOEASC from April 2003 to date;

6. Any statements made to the media by members of JOEASC concerning pension benefits, dental and vision benefits, veterans benefits, pay raises and water bill including (1) the drafting and dissemination of the press statement issued on or about March/April 2004 and any communications surrounding same; (2) the press conference concerning veterans benefits.

7. The drafting of mailings sent to Suffolk County residents in March and April 2004 concerning pension benefits, dental benefits, pay raises and veterans' benefits, including the identification of all persons who had material involvement in the drafting of those mailings

8. JOEASC's endorsement of Stephen Murphy, including the identification of all persons who had material involvement in that process;

9. Bylaws of JOEASC;

2

10. Contract negotiations between JOEASC and SCSD from 2003 to date, including (1) the identification of all JOEASC members who had material involvement in those negotiations; (2) communications surrounding the issue of dental and vision benefits; and (3) communications with Sheriff Cabral concerning the issue of dental and vision benefits.

11. The dissolution of Local 1134 and the organization and creation of JOEASC;

12. The nature of any communications between AFSCME and members of Local 1134 concerning the dissolution of Local 1134 and the organization of JOEASC.

13. The meeting attended by members of Local 1134 and/or JOEASC and AFSCME on or about January/February 2003 concerning the dissolution of Local 1134 and the creation of JOEASC;

14. The decision to file a lawsuit concerning the SCSD's late payment to the pension fund, including all communications surrounding same.

3