UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11661-RGS

DAVID BERGERON, JOHN GRENNON,
LORNE LYNCH, JOHN BARNES,
JOHN ELLIS, TIMOTHY TURLEY,
AL MOSCONE, WILLIAM PENEAU,
ERIC DILIBERO and PAUL GIGLIO,
    Plaintiffs,

V.

ANDREA CABRAL, INDIVIDUALLY and
as SHERIFF OF SUFFOLK COUNTY,
    Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1

The Defendant has filed 345 allegations of fact, the overwhelming majority of them being immaterial to issue raised by the Plaintiffs – namely, that they were retaliated against because of their union activity and political affiliation. Indeed, the Defendant's very own statement is one of undisputed facts, not undisputed **material** facts. As this Court is aware, there can be no genuine issue as to any material fact when reviewing the moving party's Summary Judgment Motion. Cellotex Corp. v. Catrette, 47 U.S. 317 (1986).

Accordingly, the Plaintiffs have addressed the relevant material facts alleged by the Defendant, and have responded in kind, with the numbered paragraph in Plaintiffs' Motion corresponding to the allegations of fact in Defendant's Motion.

25.    Disputed. Denied as to the statement that "qualifications of these individuals who

|     |     |
| --- | --- |
|     | were sworn and the fitness for the title of Deputy Sheriff were not scrutinized at that time." In fact, the Sheriff did examine individuals' background before appointing them on en masse (Ex. 1, Cabral Deposition, Page 81-82). |
| 28. | Disputed. The Sheriff does not have the authority to strip individuals of their Deputy Sheriff status because of their union activity or political affiliation. DiRuzza v. Tehama, et al. 206 F.3d 1304, (9th Cir.) (2000); Bass v. Richards, 308 F.3d 1081 (10th Cir.) (2002). |
| 29. | Disputed. The Sheriff does not have the authority to strip individuals of their Deputy Sheriff status because of their union activity or political affiliation. DiRuzza v. Tehama, et al. 206 F.3d 1304, (9th Cir.) (2000); Bass v. Richards, 308 F.3d 1081 (10th Cir.) (2002). |
| 30. | Disputed. An appointment to the position of Deputy Sheriff carries with it the ability to transport prisoners and make arrests in addition to performing details – duties which are incumbent upon a member of the Suffolk County Sheriff Department. (Ex. 2, Barnes Deposition, Day 1, p. 48, 51) |
| 31. | Disputed. Individuals can make up to as much as $25,000-$30,000.00 of additional income because of their status as Deputy Sheriff because it allows them to perform details. (Moscone Deposition, p. 159; Exhibit F) |
| 32. | Disputed. Plaintiffs contend that the review of the position of Deputy Sheriff was simply designed as a way to eventually strip them of that status because of their union activity and political affiliation. (Ex. 4, Grennon deposition, Day 1, p. 74, 87; Ex. 5, Barnes deposition, Day 2, p. 72; Ex. 3, Moscone deposition, pp. 113, |

119; Ex. 6, Lynch deposition, pp. 191-196; Ex. 7, Bergeron deposition, pp.122-123)

36. Disputed. Sheriff Cabral discussed the matter of Deputy Sheriff status with at least Chief of Staff Keeley and Superintendent Horgan. (Ex. 1, Cabral Deposition, pp. 86, 101)

39. Disputed. Sheriff Cabral discussed the matter of Deputy Sheriff status with at least Chief of Staff Keeley and Superintendent Horgan. (Id.)

40. Disputed. Sheriff Cabral discussed the matter of Deputy Sheriff status with at least Chief of Staff Keeley and Superintendent Horgan. (Id.)

41. Disputed. Sheriff Cabral discussed the matter of Deputy Sheriff status with at least Chief of Staff Keeley and Superintendent Horgan. (Id.)

44. Disputed. The Committee also considered union activity (Sumpter Deposition, p. 110) as well as political affiliation (Ex. 8, Harris Deposition, p. 120) as consideration for those who would be removed from the position of Deputy Sheriff.

48. Disputed. The Committee also considered union activity (Sumpter Deposition, p. 110) as well as political affiliation (Id.) as consideration for those who would be removed from the position of Deputy Sheriff.

49. Disputed. The Committee also considered union activity (Sumpter Deposition, p. 110) as well as political affiliation (Id.) as consideration for those who would be removed from the position of Deputy Sheriff.

54. Disputed. Turley was reimbursed 15 days pay by the Department of

Unemployment and Training, and then the 20 day suspension was expunged from his file. (Turley Deposition, pp. 25-30; 161)

55. Disputed. Turley had nothing but a professional relationship with Chief Keeley. (<u>Id</u>. at 116-117)

57. Disputed, to the extent Lynch's discipline was reduced to a three day suspension to a written reprimand which pursuant to the terms of the Collective Bargaining Agreement must be removed from an individual's file after one year and not used against him in future discipline. (Ex. 6, Lynch Deposition, p. 67)

61. Disputed. Any interactions between Keeley and Lynch did not contain the allegation of "hostile, disdainful behavior" alleged against Lynch because Lynch has "never had a conversation with the woman." (<u>Id</u>. at p. 80)

63. Disputed, to the extent that the written warning was rescinded due to the fact that Moscone was successful at arbitration when he appealed this discipline. (Ex. 3, Moscone deposition, p. 67)

64. Disputed, to the extent that the letters offered by Ellis, Barnes and Grennon disparage the Department. It is their contention that the letter simply explain the union's concern with the issues facing the Sheriff (Ex. 4, Grennon Deposition, p. 82)

70. Denied. Bergeron, Peneau, Turley, Giglio and DiLibero were all JOEASC members, and therefore because the creation and dissemination of the mailings were done by JOEASC officials, these plaintiffs had involvement because of their membership in JOEASC.

73. Disputed as to the contention that the Sheriff's Memorandum set forth the "accurate facts" concerning the issue of dental and vision coverage, payment to the retirement board, vacation benefits for veterans, alleged pay raises, and payment of the water bill.  (See Exhibits B and C of Plaintiffs' Summary Judgment Opposition Memorandum)

D. **Ellis, Barnes and Grennon's Knowledge of the Real Facts**

74-87. Disputed to the extent that Paragraphs 74 through 87 allege that what the Sheriff and her assistants had to say about the issue of pay raises, pension issues, dental and vision benefits, and military benefits was in fact the truth, they are disputed. (Id.)

88. Disputed to the extent that the information publicized by Barnes, Grennon and Ellis was intentionally false.  (Ex. 4, Grennon Deposition, pp. 128-130)

89. Disputed as to the allegation that Cabral stated the "true facts."  (Exhibits B and C of Plaintiffs' Summary Judgment Opposition Memorandum)

90. Disputed as to the allegation that Cabral stated the "true facts." (Id.)

92. Disputed as to the allegation that Cabral stated the "true facts." (Id.)

94. Disputed.  Sheriff Cabral indeed had input with respect to the names on the list, speaking with Chief of Staff Keeley and Superintendent Harris with respect to the process, and recommending herself the name of David Bergeron to be removed from the Deputy Sheriff (see Defendant's Paragraph 97)

100. Disputed.  Bergeron's tone was not argumentative or disrespectful.  (Bergeron

Deposition, p. 86) In fact, Bergeron talked to her in a very calm tone. (Id.)

101. Disputed. Bergeron engaged Sheriff Cabral not only as a employee of the Department but as a member of JOEASC. (Id.)

106. Disputed as to the argument being a heated argument, for the reasons expressed in Paragraph 100 above.

107. Disputed as to Sheriff Cabral's version of the conversation with Bergeron. Bergeron was not argumentative nor disrespectful. (Ex. 7, Bergeron deposition, p. 86)

108. Disputed. Bergeron denies being intentionally disrespectful to the Sheriff. (Id.)

109. Disputed as to the allegation that Ellis, Barnes and Grennon intentionally misrepresented the Sheriff's individual conduct and the Department's positions and policies on important issues. (Ex. 4, Grennon deposition, p. 128-130)

110. Disputed. Grennon disputes that he was duplicitous to the Sheriff. (Id.)

116. Disputed. Giglio and Dilibero dispute the fact that they were decommissioned because of their negative attitude but rather because of their union activity and political affiliation.

117. Disputed. Peneau disputes the fact that he was disrespectful and inappropriate, and contends that he was stripped of his Deputy Sheriff's position because of his union activity and political affiliation.

118. Disputed. Turley was reimbursed 15 days pay by the Department of Unemployment & Training and then the 20 day suspension was expunged from his file. Further, Turley denies being disrespectful to the command staff

including Chief Keeley and Sheriff Cabral.  (Ex. 10, Turley Deposition, pp. 116-117)

119. Disputed for the reasons expressed in Paragraph 100.

120. Disputed.  Ellis, Barnes and Grennon dispute the fact that they were decommissioned because they intentionally misrepresented Sheriff Cabral's individual conduct and the Department's position and policies on important issues.  They rather contend that they were decommissioned because of their union activity and political affiliation. (Grennon Deposition, p. 71)

121. Disputed, for the reasons expressed in Paragraph 110 above.

122. Disputed.  Lynch disputes this fact and contends that he was decommissioned because of his union activity and political affiliation.  (Ex. 6, Lynch Deposition, pp. 191-196)

123. Disputed.  Moscone disputes this fact and contends that he was decommissioned because of his union activity and political affiliation. (Id.)

124. Denied.  Those individuals who were of Deputy Sheriff status and performing details had a serious reduction in their salary.  (Moscone Deposition, p. 113, 119; Lynch Deposition 191-196)

153. Denied.  Turley maintains that he was in fact decommissioned because of retaliation for his union activity and political affiliation.

154. Disputed.  Turley actually spoke at the meeting, asking Sheriff Cabral if, in fact, Ellis was going to be disciplined and witnessed Sheriff Cabral nod her head affirmatively to the question.  (Ex. 10, Turley Deposition, p. 104)

156. Disputed. Bergeron did, in fact, engage in union activity by campaigning for the JOEASC endorsed candidate Steven Murphy (Cabral's opponent) as well as speaking with the Sheriff on behalf of union issues at Holy Name Church, and questioning her during a roll call. (Bergeron Deposition, p. 86)

157. Disputed. Bergeron did, in fact, engage in union activity by campaigning for the JOEASC endorsed candidate Steven Murphy (Cabral's opponent) as well as speaking with the Sheriff on behalf of union issues at Holy Name Church, and questioning her during a roll call. (Id.)

162. Ellis was Executive Secretary of the union and by that very position alone, engaged in union activity.

173. Disputed. Sheriff Cabral is aware of everything because "information is transmitted from everybody from the janitorial staff straight up to the Sheriff and others." (Ex. 1, Cabral Deposition, p. 4-8).

177. Disputed. Sheriff Cabral is aware of everything because "information is transmitted from everybody from the janitorial staff straight up to the Sheriff and others." (Id.)

190. Disputed. Sheriff Cabral is aware of everything because "information is transmitted from everybody from the janitorial staff straight up to the Sheriff and others." (Id.)

195. Disputed. Bergeron had in fact communicated with Sheriff Cabral at the Holy Name Church. (Ex. 7, Bergeron Deposition, p. 86)

214. Disputed. Reassignments were also made if requested so by Sheriff Cabral.

222. Denied. Captain Moscone is the only Captain now performing the work of a floor supervisor. (Ex. 3, Moscone Deposition, p. 62)

225. Disputed. Cabral knows everything. (Cabral deposition, p. 48) Further, Barnes was reassigned to spite the fact that an audit in 2003 indicated that he was doing an exemplary job. (Ex. 2, Barnes Deposition, p. 89)

228. Disputed. Cabral knows everything. (Cabral deposition, p. 48) Further, Barnes was reassigned to spite the fact that an audit in 2003 indicated that he was doing an exemplary job. (Id.)

233. Disputed. Cabral transferred Grennon because of his union activity and political affiliation. (Ex. 4, Grennon Deposition, p. 74, 87)

234. Disputed. Grennon was never duplicitous. He simply criticized the Sheriff because of her stance on dental and vision benefits, military benefits, pension benefits and pay raises. (Id.)

236. Disputed. Grennon denies the fact that he advised Cabral that he was satisfied with the Department's explanation for the delay in payment and that no action would be taken. In fact, suit was filed against the Sheriff by JOEASC. (Grennon Affidavit, paragraph 11).

237. Disputed. Grennon contends that he was removed from training because of his union activity and political affiliation. (Grennon Affidavit, paragraph 12).

244. Disputed. Lynch's days off were changed because of his union activity and political affiliation. (Ex. 6, Lynch deposition, pp. 191-196)

254. Disputed. Moscone also made other changes. (Ex. 3, Moscone Deposition, p. 37-

42)

258. Disputed. Moscone was relieved of his responsibilities because of his union activity and political affiliation. (Ex. 3, Moscone Deposition, pp. 113, 119)

261. Disputed. Moscone's shift was changed and his assignment changed because of his union activity and political affiliation. He is the only Captain now acting as a floor supervisor. (Id.)

262. Disputed. Moscone's shift was changed and his assignment changed because of his union activity and political affiliation. He is the only Captain now acting as a floor supervisor. (Id.)

264. Disputed. Moscone's shift was changed and his assignment changed because of his union activity and political affiliation. He is the only Captain now acting as a floor supervisor. (Id.)

267. Disputed. See Paragraph 31.

334. Disputed. Grennon was not promoted because of his transfer out of the training division. (Ex. 4, Grennon Deposition, pp. 74, 87)

344. Disputed. Plaintiffs were not appointed to the position of Deputy Sheriff because of their union activity and political affiliation. See Paragraph 33.

>   Plaintiffs, Bergeron, Grennon, Lynch,
>   Barnes, Ellis, Turley and Moscone,
>   By their attorney,
>
>   /s/ *Stephen C. Pfaff*
>
>   _____
>   Douglas I. Louison BBO# 545191
>   Stephen C. Pfaff BBO# 553057
>   Merrick, Lousion & Costello, LLP

                                              67 Batterymarch Street
                                              Boston, MA 02110
                                              (617) 439-0305

## CERTIFICATE OF SERVICE

      I, Stephen C. Pfaff, hereby certify that on the 24th day of September, 2007, I served the foregoing by causing a copy to be directed electronically to Ellen Caulo, Esquire
Deputy General Counsel, Suffolk County Sheriff's Department, 200 Nashua Street, Boston, MA 02114.

                                              /s/ *Stephen C. Pfaff*
                                              _____
                                              Stephen C. Pfaff