UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID BERGERON ET AL., )<br>  Plaintiffs )<br> )<br>  v. )<br> )<br>ANDREA CABRAL, INDIVIDUALLY )<br>And SHERIFF OF SUFFOLK COUNTY, )<br>  Defendant. )<br> ) | C. A. No. 05-11661-RGS |

**DEFENDANT SHERIFF ANDREA CABRAL'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT**

Now comes the Defendant Andrea Cabral, Individually and as Sheriff of Suffolk County, and respectfully files this Reply to the Plaintiffs' Opposition to the Defendant's Motion for Relief From Judgment. (Document No. 40). On February 14, 2008, the Court issued its Memorandum and Order on Defendant's Motion for Summary Judgment (Document No. 35) dismissing Count 2 (retaliation based on union activity) as to all ten Plaintiffs. The Court further granted summary judgment to Sheriff Cabral as to the political retaliation claims of Plaintiffs Peneau, Giglio, Turley, and Dilibero (Count 1), but denied it as to the remaining six Plaintiffs: Lynch, Moscone, Bergeron, Ellis, Barnes, and Grennon.

Sheriff Cabral filed a Motion for Relief From Judgment pursuant to Fed.R.Civ.P.60, alleging that (1) the Court's decision was flawed in that it relied on allegations in the Plaintiffs' Memorandum of Law for which there is no factual support in the summary judgment record and/or misconstrues the evidence that is in the record; (2) the Plaintiffs failed to make out a prima facie case of political discrimination under the

1

standard in the First Circuit; and (3) that Sheriff Cabral is entitled to qualified immunity. (Document No. 37).  Plaintiffs filed their Opposition on March 24, 2008, which included attachments (excerpts from the Deposition of Lorne Lynch and an Affidavit of Lorne Lynch) that are not part of the summary judgment record before this Court.  In their submission Plaintiffs attempt to backfill the holes in their summary judgment opposition by submitting an Affidavit from Plaintiff Lorne Lynch and excerpts from his deposition that purport to provide support for assertions that have no source in the summary judgment record. These submissions do not provide the missing factual support, further mischaracterize the summary judgment record and should be disregarded by this Court.

By this Reply, Sheriff Cabral respectfully moves to strike those documents submitted by Plaintiffs that are not already before the Court as part of the summary judgment record and responds to Plaintiffs' continued misrepresentations of the record.

> **A.    The Affidavit Of Lorne Lynch And Excerpts From Lorne Lynch's Deposition Should Be Stricken From The Summary Judgment Record**

Lynch's Affidavit should be stricken because it directly contradicts his prior sworn testimony. [1] " 'When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory' without providing 'a satisfactory explanation of why the testimony is changed.'" Colburn v. Parker Hannifin/Nichols Portland Division, 429 F.3d 325,  (1st Cir. 2005), quoting Colantuoni v. Calcagni, 44 F. 3d 1, 4-5 (1st Cir. 1994).   Paragraphs 1 & 3 of Lynch's Affidavit are in direct conflict with his deposition

---

[1] Lynch was deposed over two days on October 6, 2006 and November 2, 2006.  He testified under oath and was represented by counsel.  Lynch was also provided with the opportunity to review his deposition testimony and make any corrections using an errata sheet.  He made no changes to his deposition testimony.

2

testimony concerning the conversations he had with Superintendent Sumpter and Kevin Janielis.

Paragraph 1 of Lynch's Affidavit states, "After the September 2004 election, and sometime before February 2005, I had a conversation with Superintendent Sumpter in which *he inferred* that the administration was aware of my support for Sheriff Cabral's opponent Stephen Murphy." However, Lynch's deposition testimony is unequivocal that the **only** conversation he had with Sumpter in which support for Stephen Murphy was mentioned occurred in February 2005, during a meeting about the Department's elimination of the 7:1 overtime ratio. (Lynch Deposition, pg. 192, Plaintiffs' Response to Defendant's Statement of Undisputed Facts). According to Lynch's testimony, approximately 10-15 minutes into the conversation Sumpter stated that people who had supported Murphy were looking to advance themselves or for personal gain. (Lynch Deposition, October 2, 2006, pgs. 183, 185.) Lynch responded that he supported Murphy because he thought he would be a better sheriff, and not for personal gain. (Id.) That is the extent of the conversation. Sumpter did not direct his comment to Lynch nor did he identify Lynch or anyone else as a Murphy supporter. Sumpter did not reference Sheriff Cabral or her administration. At most, this exchange demonstrates only that Sumpter knew that Lynch was a Murphy supporter after Lynch identified himself as one. Certainly, there is nothing in the summary judgment record before this Court to support Lynch's new characterization that Sumpter "inferred that the administration was aware of my support for Sheriff Cabral's opponent Stephen Murphy." (Lynch Affidavit, ¶ 1).

In ¶ 3 of his Affidavit, Lynch now asserts that Kevin Janielis told him that "he [Janielis] had been called into Superintendent Sumpter's office and questioned about his [Janielis'] attendance **and my attendance** at a fundraiser for Murphy." (emphasis added) This statement directly contradicts Lynch's prior unambiguous testimony that Janielis was called into the **Shift Commander's office** after the primary election and a discussion ensued in which Janielis revealed that **he** was a Murphy supporter and that **he, not Lynch,** had attended a fundraiser for Stephen Murphy in Orient Heights. [2] Despite being given every opportunity to recount what Janielis told him, Lynch **never** testified that Janielis was called into the Superintendent's office and questioned about Lynch's attendance at the fundraiser. [3] The statements contained in ¶¶ 1 & 3 of Lynch's Affidavit are in direct conflict with his prior sworn testimony. Accordingly, they should be stricken from the summary judgment record and disregarded by the Court. <u>Colburn</u>, Id.

In addition to Lynch's Affidavit, Plaintiffs have also submitted 6 pages from Lynch's deposition (Lynch Deposition pgs. 181-186) that were not included in their summary judgment opposition. Since neither this excerpt from Lynch's deposition nor

---

[2] The fundraiser for Murphy took place approximately two weeks before the primary election. (Defendants' Statement of Undisputed Facts, Fact No. 209. (Document No**.** 18).

[3] A:   Captain Janielis I know was brought into the **shift commander's office** after the election.
Q:   In September or November?
A:   September.
Q:   After the primary- -
A:   I believe it was after the primary election. I know that he had told him **he** had attended a Murphy, **he** was a Murphy supporter and that **he** had attended Murphy's time in Orient Heights.
Q:   He told who?
A:   I believe it was Gene Sumpter and whoever was at the meeting with him. I know Captain Casey was at the meeting with him. I think Jerry Walsh was at the meeting with him. But this is what was relayed to me. (Lynch Deposition p. 187) (emphasis added).

Q:   Tell me **everything** you recall about what he said to you about this meeting.
A:   He just said that he was called in, and they discussed, that part of the discussion was the political event that we attended.
Q:   Is Captain Janielis a deputy sheriff?
A:   Yes.
Q:   Has he been decommissioned?
A:   No. (Lynch Deposition, pg. 188) (emphasis added).

the Affidavit is part of the summary judgment record, this Court should not consider them in ruling on the Defendant's Motion for Relief.

### B. Plaintiffs Mischaracterize The Summary Judgment Record As It Pertains to Plaintiffs Lynch, Moscone, and Bergeron.

Although Plaintiffs' counsel represents that there was no intent to deceive the Court by the use of the phrase "pissed off" ("to the extent that there is no reference to the use of the phrase 'pissed off", Plaintiffs' Reply Brief, pg. 3), it was Plaintiffs counsel who intentionally placed that phrase in quotes and attributed it to Sheriff Cabral. To be sure there is **no** reference to the use of the phrase "pissed off" by Sheriff Cabral in the entire summary judgment record. Nor does Lynch's vague affidavit clarify or explain the attribution of that phrase to Sheriff Cabral in the Plaintiffs' summary judgment opposition. Furthermore, the record does not support the Plaintiffs' new assertion that Sumpter made a comment that **alluded** to Cabral's knowledge of both Janielis' and Lynch's attendance at the Murphy fundraiser. The record is clear that Sumpter never mentioned Sheriff Cabral or Janielis when he allegedly made the comment about some people seeking to advance themselves by supporting Murphy. The record is equally clear, that Lynch's name was not mentioned when Janielis discussed his attendance at a Murphy fundraiser with Sumpter and others. There is nothing in the summary judgment record to support the Plaintiffs' new assertion that "Lynch rightfully believed that the administration-including defendant Cabral-was aware of Lynch's support of her opponent Murphy." (Plaintiffs' Reply at p. 3).

The explanation offered by Plaintiffs for the statement in their summary judgment opposition that Carney told Lynch, "that the Sheriff considers 'two types of good standing,' i.e. those who do their job well and those who support Sheriff Cabral", is

5

equally specious. Plaintiffs now say that the phrase "those who do their job well and those who support her" was simply argument to demonstrate what *Carney's intent* was or what *Carney meant* by the use of the phrase. However, Plaintiffs' memorandum expressly attributes the two types of good standing to Sheriff Cabral. Moreover, since Carney was not involved in the process that resulted in the decommissioning of the Plaintiffs nor the drafting of the letter that notified them of their decommissioning, his intent is irrelevant.

Finally, Plaintiffs' contention that Lynch "assert[ed] that there was a donation list held by defendant Cabral of all the donations made to the Murphy campaign" is a blatant mischaracterization of the record. (Plaintiffs' Reply, pg. 5). In fact, Lynch did not testify that he **believed** nor did he ever allude that Sheriff Cabral had received a donation list of Murphy supporters. (Plaintiffs' Reply Brief at p. 3-4). When pressed during the deposition to articulate how Sheriff Cabral would know that he supported Stephen Murphy, Lynch engaged in nothing more than rank speculation when he stated, "…**they** may have received a donation list. I mean there's a million ways to find out who's supporting who. There are donation lists that **they** can get their hands on. **They** would know that I donated money to Steve Murphy." (Lynch Deposition, pg. 189, emphasis added). Lynch's testimony is clearly speculation and cannot support Plaintiffs Moscone and Lynch's claim for political retaliation.

The summary judgment record also does not support Plaintiffs' assertion that Plaintiff Bergeron had an interaction with Sheriff Cabral at Holy Name School on September 14, 2005 when he was holding a Murphy sign. The record is clear that

Bergeron did not speak with Sheriff Cabral on that date and at most, she walked by him when he held the sign. (Bergeron Deposition, pg. 65-68).

### C. Conclusion

For all the reasons stated above and set forth previously in Defendant Sheriff Cabral's Motion For Relief From Judgment, the Defendant respectfully requests that this Court reconsider its decision and grant summary judgment as to the remaining political discrimination claims of Plaintiffs Lynch, Moscone, Bergeron, Ellis, Barnes, and Grennon.

The Defendant respectfully requests to be heard on her motion.

> Respectfully submitted
> For Sheriff Andrea Cabral
> By her attorney
>
> /s/ Ellen M. Caulo
> Ellen M. Caulo, BBO #545250
> Deputy General Counsel
> Suffolk County Sheriff's Department
> 200 Nashua Street
> Boston, MA 02114
> (617) 961-6681

Date:   March 28, 2008

### Local Rule Certification

I, Ellen M. Caulo, hereby certify pursuant to Local Rule 7.1 that I have conferred with counsel for the Plaintiffs in an effort to resolve the issues raised by this motion

> /s/ Ellen M. Caulo
> Ellen M. Caulo

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF).

/s/ Ellen M. Caulo
Ellen M. Caulo